SELBY KURFISS, APPELLANT, v. FLETCHER COWHERD AND CHATTEN COWHERD, RESPONDENTS.—121 S. W. (2d) 282.

Kansas City Court of Appeals. October 3, 1938.

*Milton Schwind, W. Raleigh Gough* and *Allan M. Fisher* for appellant.

*Meredith & Harwood* for respondents.

SPERRY, C.—Plaintiff is an architect and sued defendants for damages for the alleged unlawful and unauthorized appropriation and use of certain architectural plans created by plaintiff and in which he claims a right of property by reason of common-law copyright. Defendants filed answer in the nature of a general denial, and, also set up an affirmative defense. To the answer plaintiff filed reply, denying every allegation of fact contained in said answer, specifically denying certain allegations, and setting up certain countervailing facts. Defendants then moved for judgment on the pleadings, which motion was by the court sustained. From the adverse ruling on the motion for judgment defendants have appealed.

This being a unique case in Missouri and one of first impression, we believe the pleadings are of sufficient interest and importance as to justify their being herewith reproduced in full, at the expense of the brevity of this opinion. (Learned counsel have not asserted a copyright, common law or statutory, thereon).

## "FIRST AMENDED PETITION.

"Comes now the plaintiff and for his cause of action against the defendants, says that plaintiff is now, and for many years last past been, an architect and has been continuously engaged in the practice of his said profession in Kansas City, Missouri, and that during said time the defendants have been engaged in the business of constructing and selling residences buildings in Kansas City and vicinity.

"That on or about the — day of April, 1935, the defendants constructed for their own profit, a residence building at 62nd Street and Morningside Drive in Kansas City, Missouri, and that thereafter and on or about the — day of September, 1935, another residence at 55th Street and Wornall Road, in said city on the basis and by the use and means of certain plans owned by plaintiff, which said plans expressed. and set forth certain ideas for the construction of a residence building.

"Plaintiff further avers that said plans had theretofore been made by the plaintiff to be the physical expression of certain definite and unique ideas and conceptions for the construction of residences of the more expensive type and which said ideas so embodied in said physical plans constituted an exceptional and unique design for construction of high artistic merit and of great value to the plaintiff and the same were the property of the plaintiff, which fact was at all times well known to defendants and each of them, and plaintiff avers that defendants, in violation of plaintiff's rights therein, and of his right to the sole and exclusive control, possession, use and dominion thereof, as the author, originator, owner and proprietor thereof, without the consent of plaintiff took the same and constructed therefrom said residence buildings for their own profit as aforesaid; that on or about — day of April, 1935, and again on or about the — day of September, 1935, the plaintiff, being informed that the said defendants were using or about to use the said plans as the physical expression of his said ideas, protested to the defendants and denied to defendants the right to use the same, but defendants, well knowing the plaintiff's rights and claim of right thereto, used said plans and by means thereof infringed and appropriated the ideas therein incorporated and expressed, as aforesaid to plaintiff's actual damage in the sum of Eight Hundred Eighty Dollars ($880); and plaintiff further avers that by reason of the wanton and reckless disregard by defendants of plaintiff's said property rights and the circumstances attending the violation thereof by defendants as herein alleged, the plaintiff should recover of and from defendants punitive damages in the further sum of Five Thousand Dollars ($5000).

"WHEREFORE, plaintiff prays judgment against the defendants and each of them in the sum of Eight Hundred Eighty Dollars ($880) as actual or compensatory damages, and the further sum of Five

Thousand Dollars ($5000), as punitive damages and his costs herein."

"Amended Answer.

"I.

"Come now the defendants, Fletcher Cowherd and Chatten Cowherd, and for answer to plaintiff's First Amended Petition herein deny each and every allegation therein contained.

"II.

"Come now the defendants, Fletcher Cowherd and Chatten Cowherd, and for further answer to plaintiff's First Amended Petition herein allege:

"That in the early part of the year 1934, The Ladies Home Journal offered a prize for the best modernization and/or reconditioning of an old residence into a modern residence. The Safety Savings and Loan Association, a corporation, entered this contest and modernized and reconditioned the property at 3312 East 63rd Street, in Kansas City, Missouri;

"That said Association employed the plaintiff, Selby H. Kurfiss, an architect, to prepare the plans for the modernization of said residence on 63rd Street, which plans are the plans referred to in plaintiff's First Amended Petition as having been subsequently used by defendants in the construction of other residences;

"That the said Safety Savings and Loan Association paid the plaintiff in pursuance of a contract with him for these plans, drawn and furnished by him, the sum of Two Hundred Fifty ($250) Dollars;

"That said exhibition residence on 63rd Street was constructed by said Association in pursuance to said plans furnished by the plaintiff and was advertised as being open for public inspection and thousands of people inspected the property during several months;

"That the plaintiff at all times knew the purpose for which these plans were to be used and consented and agreed to the use of them, as aforesaid;

"That the plaintiff, in person, was permitted and did publish and exhibit these plans on the premises of the 63rd Street house to hundreds of parties inspecting this property explaining them and having a sign on the premises that he was the architect of these plans;

"That the plaintiff suggested to said Association that if this residence won the prize of Five Hundred ($500) Dollars, which was offered by the Ladies Home Journal, it waive its right, in his favor, to the prize and to this suggestion the said Association consented and agreed he should have this $500 prize if awarded to the Association;

"That with the knowledge and consent of the plaintiff, an article was written for the National Real Estate Journal, which contained a cut of said residence on 63rd Street, and the plans of the residence

appeared in the National Real Estate Journal along with this article;

"That plaintiff knew of the publication of these plans and prepared the sketch of the plans which was used with the publication of this article and having full knowledge of the use to be made of this sketch which gave his name as the architect of these plans;

"That subsequently in the architect's exhibit at the Better Homes Show of the Real Estate Board of Kansas City, which was held in the new Municipal Auditorium, the plaintiff again published and exhibited these plans, explaining and exhibiting them to thousands of people attending the Better Homes Show;

"That defendants further allege that the plaintiff published and exhibited to the public generally in the manner and form set forth above and that said plans were never copyrighted by the plaintiff and that the plaintiff had no property in said plans either at common law or by statute;

"That the plans herein referred to as having been published and exhibited are the plans referred to in plaintiff's First Amended Petition in which it is claimed that they were used by the defendants in the construction of the other two residences at *62nd* Street and Morningside Drive, in Kansas City, Missouri, and 55th Street and Wornall Road, in Kansas City, Missouri;

"That defendants deny that they are indebted to the plaintiff in any amount and pray that the Court dismiss the petition and that they go hence without day and have judgment against the plaintiff for their costs."

## "Second Amended Reply.

"Comes now plaintiff and by leave of court first had and obtained files this his first amended reply to the first amended answer and for his reply thereto;

### "I.

"Plaintiff denies each and every allegation of fact in said answer contained.

### "II.

"Plaintiff denies specifically that he exhibited the plans mentioned in the petition on the premises at 3312 East 63rd Street, in Kansas City, Missouri.

"Plaintiff denies specifically that he exhibited said plans at the said Better Homes Show in Kansas City, Missouri.

"Plaintiff denies specifically that he entered into the contract of employment with the said Safety Savings and Loan Association alleged in said amended answer.

### "III.

"For his further reply plaintiff says that some time prior to April, 1935, he entered into a contract of employment with the Safety Sav-

ings & Loan Association of Kansas City, Missouri, whereby certain services as architect were by him to be performed in the modernization of a certain residence at 3312 East 63rd Street in said city, and that, as a part of his said contract of employment, it was understood by and between him and the said association that the plans for said construction and all duplications thereof were instruments of service and were at all times the property of the plaintiff; that at the time of said contract of employment there was a custom in Kansas City among architects that plans by them drafted in the furnishing of architectural services were instruments of service and the property of the architect, which said custom was of long standing and a matter of common knowledge, and known to the officers of said association at the time of said contract, and the same became a part of said contract of employment, and plaintiff avers that he never parted with his title to said plans to said association.

"Plaintiff further says that the defendants herein were officers and agents of said association and the persons through whom said associations so contracted with plaintiff and at all times knew that plaintiff under his said contract was and remained the owner of said plans and knew that under said contract the sole interest of said association in said plans and blue print duplications thereof was that of a mere licensee during the construction of said residence, 3312 East 63rd Street, and that at the completion thereof said license terminated, and the true consideration paid him by said association was solely for his said services.

"And plaintiff further says that the two residences mentioned in the amended answer were by defendants built and could only have been built by the use of said plans, and that a duplication or copy of said plans was wrongfully obtained by the defendants who thereby infringed and appropriated said plans and the ideas therein expressed as in the petition herein alleged."

The matter for determination in this case is whether or not judgment on the pleadings should have been allowed. The law on this subject is clearly defined by Judge FRANK, speaking for the Supreme Court in the recent case of Cammonn v. Edwards, 100 S. W. (2d) 846, l. c. 850 and 851:

"The pleadings in this case consist of plaintiff's petition, defendants' answer and plaintiff's reply. The petition states a cause of action, the answer denies the cause of action stated in the petition, then pleads an affirmative defense thereto. The reply denies the affirmative defense alleged in the answer, then affirmatively pleads certain facts. Since plaintiff's motion for judgment on the pleadings admitted, for the purpose of the determination of the motion, all facts well pleaded in the answer, the necessary effect of the motion was to withdraw or abandon the reply. This is so because plaintiff cannot,

by reply, deny the facts contained in the defendants' answer, then later admit such facts by motion for judgment on the pleadings and have both pleas stand at the same time. The two positions are inconsistent. In such a situation, the motion for judgment being the later pleading, will be regarded as an abandonment or withdrawal of the reply. [Cases cited.] The abandonment of the reply left the case, for the purpose of plaintiff's motion, standing on the petition and the undenied answer of defendant. . . ."

"Defendants' motion for judgment (on the pleadings), for the purpose of the motion, admitted the cause of action stated in plaintiff's petition. Defendants will not be permitted to take inconsistent positions by denying in their answer the cause of action stated in plaintiff's petition, then later by motion for judgment admit that cause of action. The motion for judgment being the later pleading, will be regarded as withdrawing the denial contained in the answer. However, the affirmative defense contained in the answer was not withdrawn by the motion for judgment because the pleading of an affirmative defense is not inconsistent with the admission of the cause of action stated in the petition. This state of the record, for the purpose of defendants' motion for judgment, leaves plaintiff's cause of action admitted by the motion for judgment, and defendants' affirmative defense denied by the reply. In this situation defendants were not entitled to judgment on their motion."

From the foregoing it will be seen that when defendants moved for judgment on the pleadings they abandoned their denial of the allegations contained in plaintiff's petition, and we will treat said allegations as true; but we must also determine whether said allegations state a cause of action.

The creator of an unique intellectual production, such as a picture, a book, a play, a compilation of facts, or an architectural plan, has a property right in the thing created. This property right attaches to the incorporeal idea which has taken definite form in the mind of its creator, as distinguished from the paper upon which it is portrayed or the material of which it is physically composed. It is recognized at common law. No copyright statute is required in order for the creator of an unique intellectual product to protect such property from unauthorized invasion, appropriation or conversion. The property right therein is based upon the established principle that every man is entitled to the fruits of his own effort, mental as well as physical. [13 C. J., 945, 946, 947, 948, 955; Werckmeister v. American Lithographic Company, 134 Fed. 321, 68 L. R. A. 591, l. c. 595; New Jersey State Dental Society v. Dentacure Company, 57 N. J. Eq. 593, l. c. 595; Packard v. Fox Film Corporation, 202 N. Y. Supp. 164; Wright v. Eisle, 83 N. Y. Supp. 887, l. c. 888.]

The property right above mentioned needs no statutory enactment for its protection so long as the creator, and therefore the owner, of the product retains control of it, or until he voluntarily dedicates it to all the world; but if its owner releases it for general and unrestricted publication he can no longer reap benefits from its use except he have it copyrighted under the statute. Judge TOWNSEND, in the case of Werckmeister v. American Lithographic Co., *supra*, 595, illustrates the character of "literary" property, and the nature of its protection in the following poetic language:

"The conceptions which it represents are as free as the birds of the air or the wild beasts of the forest, but they belong to him who first reduces them to captivity. The Greeks reasoned that the perfect statute already existed in the block of marble, and that it required only the genius of the sculptor to develop its proportions. Copyright protects the captor of the idea, the genius of the sculptor, by giving him the exclusive property in his acquisition or creation.

"To pursue the foregoing analogies the common-law protection continues only so long as the captives or creations are kept in confinement or controlled. The statute permits them to go free, and releases the restraint, provided the owner has stamped them with his brand. In either case the property of the owner is protected against appropriation without his consent. The common law protected copyright before publication. The statute supersedes the common-law right, and, subject to certain conditions, extends its protection after publication. The author of a work of art has at common law a property therein until it is published with his consent."

The petition herein states a cause of action. It alleges that defendants constructed certain houses; that in doing so they used certain plans which had been devised by plaintiff; that said plans embodied certain definite and unique ideas and conceptions for the construction of residences; that same were the sole property of plaintiff; that defendants know of his ownership; that he did not give his consent to, and protested defendants' use of his property; that he had been damaged thereby; and prayed for said damages. Defendants do not assail the petition, and we hold that it states a cause of action.

Defendants motion for judgment admits the cause of action pleaded by plaintiff, Cammann v. Edwards, *supra*. The new matter set up in defendants' answer is an affirmative defense and the burden of proof is on defendant to establish same (New Jersey State Dental Society v. Dentacura Company, *supra*, 1. c. 586, 13 C. J. 994), unless plaintiff admitted the facts therein alleged, or sufficient of them to establish a defense, to be true. [Cammann v. Edwards, *supra*.]

Defendants' answer did not go unchallenged. Every allegation of fact therein contained was generally denied by plaintiff in his reply;

and most of the material facts alleged were specifically denied. Therefore, the facts setting forth defendants' affirmative defense were not admitted but required proof. Obviously such proof was not dispensed with by the mere formality of defendants, themselves, moving for judgment on the pleadings. [Cammonn v. Edwards, *supra*.]

Nowhere in plaintiff's second amended reply, under section 111 thereof, does plaintiff admit any of the allegations of the answer. After having specifically denied under section 11 thereof, that he entered the contract alleged in defendants' answer, he alleges a new and different contract other than the one mentioned in the answer. The motion for judgment on the pleadings was a judicial admission by defendant of the execution of the contract alleged by plaintiff in his reply including therein the usage pleaded (17 C. J. 496); an admission that defendants knew the terms of said contract and knew that the plans in question at all times remained the property of plaintiff and did not become the property of the Safety Savings & Loan Association of Kansas City; and that defendants wrongfully appropriated and used the plans in the construction alleged.

Were it not for the fact that plaintiff, in his argument, concedes that the allegations of the answer to the effect that a house was built by use of and in accordance with the plans, and that said house itself was thereafter open to public inspection, are true, we might be inclined to the view that no material allegation in the answer is admitted or left unchallenged. Since both parties, and apparently the trial court also, tried the case on the theory that the above facts are admitted by both parties, we shall adopt their theory and rule on the question of whether or not such admitted facts constitute a publication within the meaning of the law applicable to common law copyright. If so, then plaintiff cannot claim damages from defendants for their use of what had become public property.

We find no cases squarely in point. The case of Wright v. Eisle, 83 N. Y. Supp. 887, has been cited by defendant; but it is not strictly in point here. In that case it was held that where an architect had filed copies of the plans with the building inspector, such filing amounted to a publication of same to all the world, since they were made accessible to all who cared to go and examine them.

Such ruling follows Callaghan v. Myers, 128 U. S. 617, l. c. 657, and Jewelers' Mer. Agency v. Jewelers' Publishing Company, 155 N. Y. 241, 41 L. R. A. 846, l. c. 851, where it is held that the filing of the original for copyright purposes is a publication such as forever ends the right of the creator to claim a common law copyright, even though he fails to obtain a statutory copyright. [See, also, 6 R. C. L. 1136.] But in the case at bar there is no claim that the plans were filed with any public official or in any public office.

However, the filing mentioned in the preceding paragraph is merely

one of the methods by which publication may be accomplished. Another method is by placing the original on exhibition in a public place, as a park, where the public may view the same without restriction. [Pierce and Bushnell Mfg. Co. v. Werckmeister, 72 Fed. 54, l. c. 58.] A limited publication may be made without the owner losing his common law copyright. In Werckmeister v. American Lithographing Company, 134 Fed. 321, 68 L. R. A. 591, l. c. 596, it is said: "A limited publication of a subject of copyright is one which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public." When an author has given his thoughts, sentiments, knowledge or information to the world he can have no longer an exclusive possession of them; his conceptions have then become the common property of the public. [Stowe v. Thomas, 2 Wall Jr. 547.]

In Universal Film Manufacturing Company v. Copperman, 212 Fed. 301, l. c. 303, it is said: "If there be such a dissemination of the thing under consideration among the public as to justify the belief that it took place with the intention of rendering the work common property, then publication occurred." We might add that the authorities all hold that while the intention of the author must be taken into consideration, yet that intention will be determined not by what he says but by what he does. The circumstances of the exhibition or alleged publication will determine whether or not it was a general or a limited publication. It has been many times held that the exhibition of a work of art in an art gallery, where there are restrictions as to who shall come and see it, and where there are laws, rules, and well known and established customs and usages prohibiting copying of the things displayed, it will not be considered as a publication. [American Tobacco Company v. Werckmeister, 207 U. S. 284, l. c. 299.] There is a plethora of authority along the same line. But it is universally held that where the work is made available to the public, or any considerable portion thereof, without restriction, there has been a publication.

In the case at bar plaintiff concedes that a house was built in accordance with his plans, and with his consent; and that said "house itself was thereafter open to public inspection." We think this unrestricted exhibition of the house was a publication. It is said that it was not intended that the public could or would take measurements thereof; but the facts remain that there were no restrictions to keep any one from so doing, nor is it claimed that any effort was made to prevent it. It is not a question of whether measurements were so made, it is a question of whether the exhibition was public to all the world and unrestricted. [13 C. J. 966.] Note 20, 13 C. J. 955, is authority for the proposition that an architect who designed a unique porch had a common-law copyright thereto *before its application to a*

*building which he erected.* [Glendell v. Orr (Pa.), 13 Phila. 191.] We believe this ruling is in harmony with the following declaration: ". . . if a book be put within the reach of the general public, so that all may have access to it, no matter what limitations may be put upon the use of it by the individual subscriber or lessee, it is published, and what is known as the common-law right of copyright, or right of first publication, is gone." [Jewelers' Merc. Agency v. Jewelers' Publishing Company, *supra.*] Therefore, if the idea itself is actually published with his consent, it avails plaintiff nothing that he may have had some restrictive clause in his contract with Safety Savings and Loan Association. This is the rule laid down in the case last mentioned. By his consent the bird was released, and it is now public property. He exercised control over it as to the time, place and manner of publication. It was published with his consent and his common-law copyright is extinguished.

The judgment should be affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.