[Civ. No. 22259.   Second Dist., Div. Three.   Jan. 30, 1958.]

GEORGE HECKENKAMP, Appellant, v. ZIV TELEVI-
SION PROGRAMS, INC. (a Corporation) et al., Re-
spondents.

Arthur S. Katz and Thomas J. Jeffers, Jr., for Appellant.

Edmund G. Brown, Attorney General, Delbert E. Wong, Deputy Attorney General, Trippet, Yoakum, Stearns & Ballantyne and F. B. Yoakum, Jr., for Respondents.

WOOD (Parker), J.—Action for damages for wrongfully appropriating and using an idea and format for a series of radio and television programs; and for an injunction and an accounting. Demurrers of defendants Ziv, KTTV, and Daniels were sustained without leave to amend. Plaintiff appeals from a judgment of dismissal, based upon the order sustaining the demurrers. Motions of said defendants to strike certain portions of the complaint were granted. Appellant states that this appeal is not directed to the propriety of granting the motions.

The allegations of the first cause of action (after the motions to strike were granted) are, in substance, as follows: Early in 1953 plaintiff, a California Highway Patrol officer, conceived the idea of dramatizing and fictionizing the experiences of the California Highway Patrol for presentation as a series of radio and television programs. On September 25, 1953, he registered a written expression of his radio and television format, program idea, and working title with the Radio Writers Guild. On February 5, 1954, he registered his complete 26-page script of a half-hour teleplay entitled, "Roadblock," with the Screen Writers Guild. Said script was intended to be a representative script of plaintiff's projected television series based on the exploits and official files of the California Highway Patrol. Early in 1954 plaintiff conceived the idea of broadening the scope of his series to encompass the activities of similar organizations of other states based on their official files. On April 21, 1954, he registered this development of his format and program idea and a 24-page script of a half hour teleplay entitled, "Mountain Patrol," with the Screen Writers Guild. The written expression of plaintiff's format, idea, working title, and scripts are referred to thereafter in the complaint as plaintiff's "property." Plaintiff is the author and owner of said property, which property has not been published. It is impractical, by reason of the nature and bulk of said property, to attach copies thereof to the complaint, and copies will be produced upon order of the court. Plaintiff desired the approval of the California Highway Patrol to use material from its files in the exploitation of his property, and he "submitted through proper departmental channels, and in con-

fidence, his script entitled 'Roadblock.'" Several months passed without plaintiff receiving any word from the commissioner of the California Highway Patrol. During this period plaintiff discussed the matter of departmental approval with defendant Daniels, who was and is the Los Angeles public information officer of the patrol. "Plaintiff, in discussing his submission with defendant Daniels, and in confiding to him all the details of, and information about plaintiff's property did so in reliance on the fact that defendant Daniels was an employee in the department who was vested with appropriate authority with respect to the matter involved and who was in the direct channel of communication and command through which plaintiff's submission must travel. Plaintiff's sole purpose in making his submission and in discussing the details and scope of his property was to obtain the approval of the department to use its files, and was made for no other purpose. Plaintiff intended at no time to dedicate his property to the public, to abandon his rights therein or to gratuitously give them away. By a letter dated April 2, 1954, plaintiff was informed by Commissioner Caldwell [of the patrol] that he could not be given access to the department's files as a matter of policy. Some weeks later the script which plaintiff had submitted through departmental channels months earlier was personally handed to plaintiff by defendant Daniels who was then fully familiar with its contents and with that of plaintiff's other property." Before and during the period plaintiff discussed the matter with Daniels, he (Daniels) was associated in various ventures with Ziv. Daniels intentionally and wilfully misappropriated plaintiff's property and used the secret information "thus obtained" for his own benefit and wrongfully divulged said property and secret information to Ziv. Ziv rewarded Daniels by appointing him a technical advisor for the television series entitled, "Highway Patrol," based on plaintiff's property, and placed him on its payroll during the filming of the series. Before Ziv publicly announced its intention to produce the television series, "Highway Patrol," based on plaintiff's property, plaintiff met with a vice-president of Ziv and with the producer of said series to discuss plaintiff's rights. In July 1954, notwithstanding that Ziv had been given early notice by plaintiff that its contemplated television series was based on plaintiff's property, Ziv announced in motion picture trade papers that the first film in the series entitled, "Highway Patrol," would be made on August 19, 1954. Ziv and Daniels have continued to

copy and use plaintiff's property in the preparation and production of their television series entitled, "Highway Patrol," and have refused to pay plaintiff for the right to copy and use his property. Ziv and Daniels have produced at least 39 half-hour television films based upon, copying, using and embodying plaintiff's property and have distributed said films in the United States, Canada, and in many foreign countries. Commencing October 3, 1955, said films have been shown in Los Angeles over KTTV's television station. Unless Ziv and Daniels are enjoined from producing and distributing the series "Highway Patrol," they will continue to profit from copying and using plaintiff's property. Unless KTTV is enjoined from telecasting said series and from selling advertising in conjunction therewith, the "already materially depleted value of plaintiff's property will be totally diluted and destroyed." Plaintiff has not been able to obtain Ziv's and Daniels' copies of television series "Highway Patrol" for the purpose of attaching the same to the complaint pursuant to the provisions of section 426, subdivision 3, of the Code of Civil Procedure. By reason of their intentional and oppressive acts as aforesaid, Ziv and Daniels have misappropriated plaintiff's property and have destroyed its value to plaintiff. Plaintiff has been damaged thereby in the amount of $350,000, which is the reasonable value of the television rights in plaintiff's property, and plaintiff has been damaged in an additional amount of $100,000, which is the reasonable value of other exploitation rights in plaintiff's property. All the aforesaid acts of Ziv and Daniels are continuing wrongs, and unless said defendants are enjoined from producing and distributing "Highway Patrol" they will irreparably damage plaintiff's opportunities to exploit his property. All the aforesaid acts of Ziv and Daniels were intentional and oppressive and were the result of a scheme and conspiracy of said defendants to enrich themselves by appropriating and using plaintiff's property. By reason of those acts Ziv and Daniels have acquired substantial profits and they should account to plaintiff therefor.

The second cause of action incorporates, by reference, all the allegations of the first cause of action, except the allegations as to damages. Additional allegations therein are: On January 18, 1954, plaintiff entered into a written agreement with Mr. Corcoran and Mr. Gundlefinger whereby they undertook to represent him in the exploitation of his property. Plaintiff and his representatives expended time, money and

effort in order to interest others in producing or distributing or sponsoring plaintiff's property as a television series. As a result of the deliberate and intentional acts "as aforesaid," Ziv and Daniels misappropriated plaintiff's property and passed it off as their own, and they copied, used and embodied its elements in the production and distribution of their "Highway Patrol" series. They thereby committed gross acts of unfair competition against plaintiff "in that they turned his own property against him." Since Ziv's announcement of its intention to produce the "Highway Patrol" television series, plaintiff and his associates have lost the interest of persons who, before such announcement, had manifested an interest in plaintiff's property. Plaintiff has been unable to create any new interest in his property. By reason of their gross acts of unfair competition, as aforesaid, Ziv and Daniels usurped and occupied the then undeveloped television area which plaintiff's property was designed to fill, thereby "diluting the value of said property." The value of said property "will be irreparably damaged" if Ziv and Daniels be permitted to unlawfully exploit plaintiff's property by using, copying, and embodying its elements in their television series entitled, "Highway Patrol." On September 21, 1955, some weeks before Ziv's and Daniels' "Highway Patrol" series began its first television run in Los Angeles, plaintiff advised KTTV of his property rights. KTTV chose to proceed with the telecasting of Ziv's and Daniels' television series, and is now telecasting said series, and KTTV thereby became an active and continuing participant with said defendants Ziv and Daniels in their scheme and conspiracy to misappropriate plaintiff's property and to use it to his detriment. Defendants Barker Bros. and General Electric Company, as sponsors of said Highway Patrol series, and defendants Roderick Mays and Rod Mays and Company, as advertising agents of said sponsors, are paying KTTV for the right to advertise the wares of said sponsors on the "Highway Patrol" series. No defendant has offered to pay plaintiff for the use of his property. Plaintiff has been damaged in the amount of $350,000, which is the reasonable value of the television rights in plaintiff's property, and plaintiff has been damaged in the additional amount of $100,000, which is the reasonable value of other exploitation rights in plaintiff's property. The foregoing acts of unfair competition by Ziv, Daniels and KTTV were intentional and oppressive.

The prayer is for compensatory and punitive damages, and

for an accounting; and to enjoin Ziv and Daniels from producing, distributing and exploiting the Highway Patrol television series; and to enjoin KTTV from telecasting the series; and to enjoin Barker Bros. and General Electric from advertising in conjunction with telecasting the series.

Ziv, Daniels and KTTV demurred to the complaint upon the grounds that neither of the alleged causes of action stated facts sufficient to constitute a cause of action, and that both of the alleged causes of action were uncertain, ambiguous and unintelligible. Said defendants also filed motions to strike certain portions of the complaint, and to require plaintiff to comply with section 426, subdivision 3, of the Code of Civil Procedure, by filing scripts with the court.

Subsequently, plaintiff delivered scripts of "Roadblock" and "Mountain Patrol," and the defendants delivered 19 scripts of "Highway Patrol," to the trial court.

In a memorandum filed by plaintiff with the trial court, plaintiff stated: "Plaintiff does not contend that any of defendants' scripts copy the mode of expression of any portion of plaintiff's two 'sample scripts.' Nor does plaintiff contend that in copying plaintiff's idea for a program series that defendants have copied the arrangement of the words in which the idea is couched. There are no copyright or plagiarism issues involved."

The motions to strike portions of the complaint were granted in part. The demurrers were sustained without leave to amend, and the action was dismissed. In a memorandum of ruling, with reference to the motions to strike and the demurrers, the trial judge stated: "The allegations of the complaint are broad enough to charge misappropriation of plaintiff's scripts 'Roadblock' and 'Mountain Patrol' [citation of references to complaint], which scripts have been tendered to the Court under C.C.P. 426(3) with copies of defendants' 19 scripts allegedly involved, under the caption 'Highway Patrol.' Examination pursuant to that section produces the conclusion that there is no infringement, in and to plaintiff's rights, in the sense of plagiarism or literary pirating. In the numerous memoranda filed, plaintiff himself has abandoned such allegations. claiming that the 'idea' of such a series, as alleged in par. VI (a), was property; and was revealed in confidence to defendant Daniels, who thereafter, with the other defendants, proceeded to use it in violation of plaintiff's rights. Essentially, this involved the presentation in dramatized form of actual cases developed by the Highway Patrol.

In such a development is seems clear plaintiff could not have a property right. If, for instance, the Department itself undertook such publicity, could it be enjoined because an employee thereof made the suggestion? The idea of dramatizing the operations of peace officers generally is certainly not unique. Consequently, it seems necessary to hold that no cause of action is purported to be stated except for plagiarism, which upon examination of scripts I reject; and which plaintiff also disclaims (C.C.P. 426(3).) As to the claim of an asserted property right, it appears that plaintiff has none, and if that is so, there cannot be breach of a fiduciary relationship through implementation of the 'idea,' which seems to be completely in the public domain.''

Appellant contends that the first cause of action states a cause of action ''for the disclosure and use of unpublished ideas and information revealed in confidence.'' He states that he has not attempted to plead an action based upon copyrightable material; that there is no copyright infringement or plagiarism herein; that defendants are not charged with copying portions of his script; that only the program idea was taken and such a taking is not actionable under statutory copyright principles; that he could never show, by comparing parallel columns of expression in the scripts, an actionable copying of his work ''which copyright would protect.'' He states that his action is for unauthorized copying and use, in breach of confidence, of his idea for a television program; that the copying he refers to is not the copying of his script but is the copying of his idea which he revealed in confidence; that if, after comparing the scripts, the over-all impression is that the format of defendants' program is like plaintiff's format, the plaintiff has stated a cause of action; and that where a plaintiff's intellectual production is obtained in breach of trust the law punishes the wrongful act of obtaining the idea ''rather than consciously to protect the 'property' of the plaintiff.'' Appellant argues further that a cause of action for breach of confidence is stated by the allegations that his program idea was given to Daniels in confidence, and that Daniels disclosed the idea to Ziv, and that Ziv used the idea with knowledge of appellant's ''rights.'' It seems to be appellant's argument that if an idea which is not protectible is disclosed to a person in confidence, the idea then becomes protectible.

Section 980 of the Civil Code, as amended in 1947, provides in part: ''The author or proprietor of any composition in

letters or art has an exclusive ownership in the representation or expression thereof as against all persons except one who originally and independently creates the same or a similar composition."    In *Weitzenkorn* v. *Lesser,* 40 Cal.2d 778 [256 P.2d 947], the court said at page 789: "The 1947 amendment to section 980 has ·eliminated the protection formerly given to 'any product of the mind.' The statute as it now exists, and as it read at the time this cause of action arose, provides protection only 'in the representation or expression' of a composition. The Legislature has abrogated the rule of protectibility of an idea and California now accepts the traditional theory of protectible property under common law copyright." (See also *Desny* v. *Wilder,* 46 Cal.2d 715, 732 [299 P.2d 257].)

The allegations show that the files which were the basis for plaintiff's program idea were files of a department of state government; and that plaintiff did not have permission to use the files for his personal commercial purposes or at all. It seems to be his position that if a person expresses, in confidence to an employee of the government, an idea with reference to a commercial use of government files that the person thereby establishes a legal position favorable to himself whereby he can prevent the employee, or others, or the government itself, from using the files in a manner suggested by him, except with his consent. It was not shown that plaintiff had a contract, express, or implied in fact or implied in law, with Daniels or anyone. Plaintiff asserts that his action sounds in tort. There is no allegation that Daniels accepted, in confidence, the disclosure of the idea. Plaintiff had no property right in the idea with respect to use of the government files for commercial purposes. He states that a question of property does not enter into the matter where there is a confidential relationship, but that an exclusive property right might be a prerequisite for legal relief when there is no relationship between the parties. He argues, however, that his idea was a property right. The alleged first cause of action did not state facts sufficient to constitute a cause of action.

Appellant contends that his second cause of action sets forth facts sufficient to constitute a cause of action for unfair competition in that it shows "that defendants have surreptitiously misappropriated plaintiff's work product, have tortiously interfered with his prospective contractual relations, and have unjustly enriched themselves thereby." The cases cited above, with reference to the first cause of action, are

applicable here. Also, the above discussion is applicable here. The alleged second cause of action does not state facts sufficient to state a cause of action.

The court did not err in sustaining the demurrers without leave to amend.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 26, 1958.