[Civ. No. 18372.   First Dist., Div. One.   Oct. 27, 1959.]

ERNEST MANFRED SMITH, Appellant, v. DAVID A. PAUL et al., Respondents.

Maynard Garrison, Jr., and Wallace, Garrison, Norton & Ray for Appellant.

Albert E. Gately, Gately & Gately and Robert H. Andresen for Respondents.

BRAY, P. J.—Plaintiff appeals on the judgment roll alone from a judgment in favor of defendants.

### QUESTIONS PRESENTED

1. Does a designer have a common-law copyright in plans for a house prepared by him?

2. Does the filing of the plans in a county office as required by law to obtain a building permit constitute a publication divesting plaintiff of his common-law copyright?

(This is a case of first impression in California.)

### FACTS

Plaintiff, although not a licensed architect, is engaged in the business of designing homes. In his complaint he alleged that defendants were constructing a house, using, without his consent, plans and specifications created and designed by him, the reasonable value of the use of which is $3,500.[1]

The court entered a minute order giving judgment for defendants, and stating: ". . . defendants to prepare findings, consistent with the view that while there was a fiduciary relationship and a common law copyright, and the plans were 'copies,' and there was responsibility on the both defendants for copying them, the plans had been published, and also there was no resultant damage or profit." The court found that defendant Paul "copied said plans . . . for the construction of the residence for defendant Peter Pederson with the knowledge of said defendant that the Carr house was being substantially duplicated."

1. *Common-Law Copyright.*

Section 980, Civil Code, provides:

"(a) The author or proprietor of any composition in letters or art has an exclusive ownership in the representation or expression thereof as against all persons except one who originally and independently creates the same or a similar composition.

"(b) The inventor or proprietor of any invention or design, with or without delineation, or other graphical representation, has an exclusive ownership therein, and in the representation or expression thereof, which continues so long as the invention or design and the representations or expressions thereof made by him remain in his possession."

This section has been said to accept the traditional theory of protectible property under common-law copyright. (*Weitzenkorn* v. *Lesser* (1953), 40 Cal.2d 778, 789 [256 P.2d 947]; *Heckenkamp* v. *ZIV Television Programs, Inc.* (1958), 157 Cal.App.2d 293, 300 [321 P.2d 137]; 31 Cal.Jur.2d 702, § 4.) While there does not appear to be any California au-

---

[1]Joined for trial is an action by Albert B. Carr and Marie A. Carr (the persons for whom plaintiff made the original plans) against defendants, claiming $7,500 damages due to the use without their consent of said plans and specifications and duplicating their house. No appeal was taken in that action from the judgment in favor of defendants.

Defendant Paul, the contractor who constructed the house for defendant Pederson, did not appear on this appeal either by brief or on the argument.

thority holding that a common-law copyright would apply to architectural designs, plans and specifications, there is authority to that effect in other jurisdictions. (*Kurfiss* v. *Cowherd* (1938), 233 Mo.App. 397 [121 S.W.2d 282]; *Wright* v. *Eisle* (1903), 86 App.Div. 356 [83 N.Y.S. 887].)

Defendants rely upon a statement in 3 American Jurisprudence at page 1003: "With respect to the idea itself, however, where it is not protected by patent or copyright, it has been said that there is no intrinsic property in the architect's design or any exclusive right in the design or in the reproduction."

An examination of the case upon which this statement is based, *Mackay* v. *Benjamin Franklin Realty & Holding Co.*, 288 Pa. 207 [135 A. 613, 50 A.L.R. 1164], demonstrates that the statement is too broad, as the court merely held that where a property owner employs an architect to design a building for him, and the architect, unbeknownst to his employer, appropriates an idea from another architect's plans, the employer is not liable "for something so entirely intangible as an idea, not connected with physical property." (50 A.L.R. 1166.) The opinion then states: "Doubtless trover might be maintained for the actual conversion of plans" but not against the employer who had no knowledge of the architect's acts. Whatever the interpretation of the decision in the Mackay case, section 980 of our Civil Code provides, in effect, that a designer's plans are his literary property, limited, however, to as long as the plans "remain in his possession." ▉ We see no reason why architectural plans do not come within the provisions of section 980, Civil Code, particularly subdivision (b). We therefore hold that such plans are protectible property under common-law copyright.

2. *Publication.*

Publication of the plans would end the property right. (Civ. Code, § 983.) Plaintiff contends that as the filing of the plans was required by a Marin County ordinance in order to obtain a building permit, such filing was not voluntary and could not constitute a publication which would deprive the designer of his property right. In his contract with the Carrs, plaintiff retained ownership of the plans with the Carrs to have the exclusive use thereof. Defendants contend and the court found that the construction and maintenance of the house in full public view also constitutes a publication.

The nearest approach in California to the questions in-

volved here is in *Weinstock, Lubin & Co.* v. *Marks* (1895), 109 Cal. 529 [42 P. 142, 50 Am.St. Rep. 57, 30 L.R.A. 182]. There the plaintiff maintained a wearing apparel store designated "Mechanics' Store" in a building erected by it in 1891 "the front of which is of peculiar architecture, containing arches and alcoves, of which there was none other similar in the city of Sacramento." (P. 534.) The defendant erected a building adjoining, which so far as the first or lower story was concerned was similar in all respects to that of the plaintiff. The defendant there maintained a store which he named "Mechanical Store." The court found that the "erection of the defendant's building exactly the same as plaintiff's building in every particular, and the adoption of the use of the words 'Mechanical Store,' and the absence of any name or sign upon or in defendant's store designating the true proprietorship of defendant's store" (pp. 534-535) were all done to deceive the public and to pirate the plaintiff's customers. The trial court, in an injunction proceeding, ordered the defendant to place, both outside and inside of his store, a sign legible to customers and passersby, indicating his proprietorship. On appeal the court treated the defendant's conduct as a fraud upon the public and the plaintiff, but felt that the order was too strict in requiring the defendant to show his proprietorship. It modified the order to require that the defendant "in the conduct of this business shall distinguish his place of business from that in which the plaintiff is carrying on his business in some mode or form that shall be a sufficient indication to the public that it is a different place of business from that of the plaintiff." (P. 543.) In discussing the decree which should be entered the court said, among other things, "How may the court reach the wrong? The defendant had the right to erect his building and erect it in any style of architecture his fancy might dictate." (P. 543.)

It has been held that "the filing of the original [of an intellectual product] for copyright purposes is a publication such as forever ends the right of the creator to claim a common law copyright, even though he fails to obtain a statutory copyright." (*Kurfiss* v. *Cowherd, supra,* 121 S.W.2d 282, 287; see also cases there cited.)

The architect expresses his thoughts and reveals his artistic personality in his plans, drawings and designs. In this respect, he is similar to all other creators of intellectual properties. Additionally, however, he uses, among other things,

technical signs, symbols and graphic representations to communicate his ideas.[2]

What constitutes "publication" of architectural plans, drawings and designs where the common-law copyright has attached has, so far as we have been able to determine, been considered in only three reported cases in this country. All are lower court decisions. *Wright* v. *Eisle, supra,* 83 N.Y.S. 887, held that the filing of the plans for a building in a municipal building department which required such filing before construction could be approved, and the construction of the building, was such a publication of the plans as to destroy the architect's common-law copyright in them. *Kurfiss* v. *Cowherd, supra,* 121 S.W.2d 282, and *Gendell* v. *Orr* (1879), 13 Phila. 191 (a city court), held that the building of a structure from the plans, and its exposure to public gaze, was such a publication as to destroy the architect's common-law copyright in the plans. These cases will be discussed later.

Generally, writers who have considered the subject contend that these cases are wrong in principle.[3] Only a "general publication" and not a "limited publication" results in loss of common-law rights. (*William A. Meier Glass Co.* v. *Anchor Hocking Glass Corp.* (Pa., 1951), 95 F.Supp. 264.) █ As said in the article by Arthur S. Katz, *supra* (19 Law & Contemp. Prob. 224) there are two forms of publication in copyright cases: one, general publication, the other limited publication. █ General publication has been defined as "such a disclosure, communication, circulation, exhibition, or distribution of the subject of copyright, tendered or given to one or more members of the general public, as implies an abandonment of the right of copyright or its dedication to the public." (*Werckmeister* v. *American Lithographic Co.* (1904), 134 F. 321, 324.) █ A limited publication is "one which communicates a knowledge of its contents under conditions expressly or impliedly precluding its dedication to the public." (*Idem,* p. 324.) █ The United States Supreme Court said in *American Tobacco Co.* v. *Werckmeister* (1907), 207 U.S. 284, 299-300 [28 S.Ct. 72, 52 L.Ed. 208] : "It is a fundamental rule that to constitute publication there must be such a dis-

---

[2] See "Copyright Protection of Architectural Plans, Drawings and Designs" by Arthur S. Katz, in vol. 19, Law and Contemporary Problems, 225, 229-230 (1954).

[3] See Katz, *supra;* "*Publication in the Law of Copyright*" by Richard W. Roberts in Copyright Law Symposium Number Nine, at p. 135; 24 So. Cal. L. Rev. 375.

semination of the work of art itself among the public as to justify the belief that it took place with the *intention* of rendering such work common property.'' (Emphasis added.) While the court there was dealing with statutory copyright and with other than architectural plans, there is no reason why the same rule should not apply to architectural plans protected by common-law copyright. An architect who is required to file his plans in a public office in order that his client may obtain the necessary permit to build is certainly not intending thereby to abandon his rights in his work, nor is he ''intentionally'' making it public in the sense of section 983, subdivision (b): ''If the owner of any invention or design *intentionally* makes it public'' (emphasis added) a copy or reproduction may be made by others. Actually the architect by the requirement that his plans be filed in order to build is forced against his desires and consent to lose his common-law rights if it be held that he thereby ''publishes'' his plans. In effect, because his plans then become free for the taking, he is placed in a position where he could rarely sell more than one set of his plans. The same is true of the fact that a building is built from the plans and is open to the gaze of the public. Such fact may be a publication of the *general design or idea* of the building but not a publication of the exact plans whereby another may without effort other than that of tracing the work of the architect completely duplicate the latter's effort.

The purpose of the requirement of filing the plans in a government office is to protect the public from unsafe construction —not to take away from the architect his common-law property rights. It must be remembered that, generally speaking, it is only by repeated uses of the same sets of plans (or modifications thereof) that the architect really profits from his intellectual production. In a completed structure the architect is not publishing a copy of his plans. The structure is the result of his plans and while he is publishing the general design (such as in *Weinstock, Lubin & Co.* v. *Marks, supra,* 109 Cal. 529, where the court appeared to hold that the defendant could duplicate the exterior of the plaintiff's building) and cannot complain if someone duplicates his design, a far different situation appears when that person copies the complete plans of the structure.

The architect derives no profit from the deposit of his plans with the building department. He does not thereby sell his work and has no intention of dedicating it to the public. He is

merely complying with a governmental regulation, which regulation, in itself, does not require a dedication, and is merely to insure that if the architect's plans are thereafter used, the structure thereby designed shall comply with governmental regulations.

In view of the language of section 983, subdivision (b), "If the owner of any invention or design *intentionally* makes it public," (emphasis added) we do not believe that the mere filing of the architect's plans in a building inspector's office or in any governmental office in compliance with a requirement that the plans be so filed in order to obtain a building permit constitutes a publication. While the filing is "intentional" in a sense, it is a compulsory filing and would not appear to be accompanied by the intention required by the statute, nor filed with the intention of making the plans public.

Section 1892, Code of Civil Procedure, provides: "Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute." Section 1893 provides that "Every public officer having the custody of a public writing, which a citizen has a right to inspect, is bound to give him, on demand, a certified copy of it, on payment of the legal fees therefor, and such copy is admissible as evidence in like cases and with like effect as the original writing." Section 1894 provides that "Public writings" include "4. Public records, kept in this state, of private writings." In *Harrison* v. *Powers* (1912), 19 Cal.App. 762, 763 [127 P. 818], it was held that a person could copy official documents (there census reports of school children in the official custody of the city and county board of education) even though the purpose was to use the information obtained in private business.

■ As we have pointed out, the forced filing of the plans in the building department of a municipality constitutes only a limited publication of the common-law copyright, a limited publication which gives no person the right to use a copy thereof. ■ In view of the limited purpose of the filing of architect's plans in a building department the plans do not become a public record in the sense that the public has the right to use such plans. The plans are in the category of those mentioned in *Runyon* v. *Board of Prison Terms & Paroles*, 26 Cal.App.2d 183 [79 P.2d 101], where the court stated (p. 184) : ". . . the courts have consistently declared that in another class of cases public policy demands that certain

communications and documents shall be treated as confidential and therefore are not open to indiscriminate inspection, notwithstanding that they are in the custody of a public officer or board and are of a public nature." The filed plans are open to public inspection for the purpose of determining whether or not the building planned will comply with the law, but not for the purpose of giving anyone the right to use them. In *Whelan* v. *Superior Court,* 114 Cal. 548 [46 P. 468], it was held that instructions to the sheriff by the attorney of an execution creditor do not become a public record which a citizen is entitled to inspect. Likewise in *Coldwell* v. *Board of Public Works* (1921), 187 Cal. 510 [202 P. 879], it was held that estimates, plans, etc. prepared by the city engineer's assistants for submission to him for his approval in connection with the acquisition and construction of the Hetch Hetchy municipal water project were not public records. As pointed out in *Miller* v. *Murphy,* 78 Cal.App. 751, 755 [248 P. 934], ". . . the mere fact that a document is in a public office or in the custody of a public officer does not make it a public record . . ." While it is important that the rights of citizens to inspect governmental records be preserved, such right, nevertheless, does not extend to all records or documents in the custody of public officers. It would be unreasonable to deprive an architect of his property right merely because he is required to file his plans with a public officer, for reasons completely independent of any requirement that he thereby lose such right. ■ *People* v. *Purcell* (1937), 22 Cal.App.2d 126, 130 [70 P.2d 706], defines a public record: " 'A public record, strictly speaking, is one made by a public officer in pursuance of duty, the immediate purpose of which is to disseminate information to the public, or to serve as a memorial of official transactions for public reference.' (*People* v. *Harnett,* 131 Misc. 75 [226 N.Y. Supp. 338.].) To the same effect see *State* v. *Grace,* 43 Wyo. 454 [5 P.2d 301, 303]." The purpose of the filing of the architect's plans with a building department is none of those set forth in the definition. The city of Los Angeles has recognized the limited purpose of such filing by providing in its building code (Los Angeles City Building Code, § 91.0211 (f) (1952)), that the plans required by that code to be filed shall not thereby become a public record or available for examination by the public.

In *United States* v. *Certain Parcels of Land,* 15 F.R.D. 224, it was held that the deposit of documents in public records pursuant to an order of court was not "intentional" and

"voluntary" as is required by section 983, Civil Code, *supra,* and therefore not a publication. The court said (p. 234): "Destruction of a 'common-law copyright' in California is accomplished only by 'publication of the composition by the owner thereof.' [*Ibid.*] This implies voluntary publication. *Stanley* v. *Columbia Broadcasting System, supra,* 35 Cal.2d at page 661, 221 P.2d at p. 78. Since publication pursuant to order of court cannot be said to constitute voluntary publication by the owner within the meaning of § 983 (a) of the California Civil Code, such an order could not have the effect of depriving the appraisers of any property right they may now have under California law."

In *Stanley* v. *Columbia Broadcasting System* (1950), 35 Cal.2d 653, 661 [221 P.2d 73, 23 A.L.R.2d 216], the court said: " '. . . the common-law right is perpetual, existing until lost or terminated by the *voluntary* act of the owner . . .' " (Emphasis added.)

In *Wright* v. *Eisle, supra,* 83 N.Y.S. 887, a case similar to ours, the court held that the fact that the architect filed the plans and specifications with the building department of the city of Mt. Vernon (which he was required to do in order to get the necessary building permit) plus the construction of the building in public view, constituted a publication which terminated the common-law copyright. There the defendant after seeing the residence constructed under the architect's plans and specifications went to him and sought a duplicate thereof. The defendant refused to pay the price demanded but hired another architect who copied said plans and specifications. The architect sued the defendant claiming a common law right of property in the plans. The court held that as long as the plans remained in the hands of the designer he had a property right in them. However, he lost this right by the publication of the plans in filing them with the building department and in constructing the house. "The law protects him in the first publication of his work; it guaranties him the right to receive compensation for his labor; and when this has been accomplished the purpose of the rule of law has been served, and at common law he can have no further rights in the work." (P. 889.) When the designer "has permitted the work to be filed in a public office as a step in furnishing the basis on which he is to receive compensation from his work . . . the plaintiff has published his work to the world, and can have no exclusive right in the design, or in its reproduction.

This would seem to be specially true where the plans and specifications have been used in the construction of a building, and the building has been exposed to the gaze of the public, and has afforded plaintiff the full value of his services.'' (P. 889.)

The decision in the Wright case is weakened somewhat by the fact that the court held that there is no evidence in the case that the defendant, or anyone acting in his behalf, had copied the plans and specifications on file in the building department, and the fact that the plaintiff architect had transferred to the person for whom he had prepared the plans, all property rights therein, whereas in our case the plaintiff architect retained their ownership.

In *Kurfiss* v. *Cowherd, supra,* 121 S.W.2d 282, the defendants copied without consent plans of a house drawn by the plaintiff in an architectural contest, after a house had been constructed from such plans, under a license from the plaintiff. (The plans were not, as in the Wright case, *supra,* filed in any public office.) While the court held that the plaintiff had lost his common-law property rights, it was because of the peculiar facts of the case, and because the court found that there was a *general* publication by the architect and not a *limited* one as in our case. There, the house constructed from the plans ''was advertised as being open for public inspection and thousands of people inspected the property during several months.'' (P. 284.) The court pointed out that by placing the house on public inspection there was a general as distinguished from a limited publication. In determining the type of publication the court said (pp. 287-288) : ''We might add that the authorities all hold that while the intention of the author must be taken into consideration, yet that intention will be determined not by what he says but by what he does. The circumstances of the exhibition or alleged publication will determine whether or not it was a general or limited publication. . . . We think this unrestricted exhibition of the house was a publication. It is said that it was not intended that the public could or would take measurements thereof; but the fact remains that there were no restrictions to keep anyone from so doing, nor is it claimed that any effort was made to prevent it. It is not a question of whether measurements were so made; it is a question of whether the exhibition was public to all the world and unrestricted.'' The court pointed out: ''It has been many times held that the exhibition

of a work of art in an art gallery, where there are restrictions as to who shall come and see it, and where there are laws, rules, and well known and established customs and usages prohibiting copying of the things displayed, it will not be considered as a publication. [Citations.]'' (P. 287.) Likewise, while the common-law copyright has been held to be merely the right of first publication (*Werckmeister* v. *American Lithographic Co., supra,* 134 F. 321, 324; *Stanley* v. *Columbia Broadcasting System, supra,* 35 Cal.2d 653) the printing of a book for general distribution and its distribution is a general publication which terminates the author's common-law copyright, and anyone may duplicate the book word for word. Such result does not follow from a limited distribution of the book. Thus ''A limited publication which communicates the contents of a manuscript to a limited group and for a limited purpose, and without the right of general diffusion, reproduction, distribution or sale, is considered a 'limited publication,' which *does not* result in loss of the author's common law right to his manuscript.'' (*Some Observations on "Publication" In the Law of Copyright,* by Leon R. Yankwich, Chief United States District Judge, Southern District of California, vol. 5, Bulletin, Copyright Society of the U.S.A. 329, 334; see cases cited p. 334.) ''The law recognizes a vital distinction between the public and the private circulation of copies. The owner may circulate copies of a work among a limited number of persons, with the understanding and on the condition that it is not to be made public. In such case no publication takes place, notwithstanding that the copies so distributed are printed.'' (Drone on Copyright, 290; see 19 Law & Contemp. Prob., p. 235.)

Is it legally sound to say that a completed structure is a publication of its plans? It has been held that for a work to be published it must be reproduced, that is, there must be an issuance of copies to the general public. (*White-Smith Music Co.* v. *Apollo Co.* (1907), 209 U.S. 1 [28 S.Ct. 319, 52 L.Ed. 655].) A completed structure is no more a copy than the exhibition of an uncopyrighted moving picture film, the performance of an uncopyrighted radio script, or the broadcast of an uncopyrighted radio script, all of which acts have been held not to dedicate the contents to the public. (*De Mille Co.* v. *Casey* (1923), 121 Misc. 78 [201 N.Y.S. 20] ; *Universal Film Mfg. Co.* v. *Copperman* (1914), 218 F. 577, cert. den. 235 U.S. 704 [35 S.Ct. 209, 59 L.Ed. 433].) ▮ The

noun "copy" ordinarily and as used in the copyright cases signifies a tangible object that is a reproduction of the original work. Merely viewing the interior of a house by a limited number of people, i.e., the guests of the owner, would not constitute an act of publication since such guests do not thereby gain such dominion over the copy (if the house can be considered a copy) as to warrant the conclusion that the work has been generally published. It is clearly a limited publication as to the plans, even though the exhibition of the exterior to the public generally loses any common law copyright to the exterior design that may have existed prior thereto. Here the architect limited the use of his plans both as to the persons allowed to use the work (the Carrs and their agent the builder) and to the use which such persons might make of the work (the construction of one house). This limitation as to persons and use has been held to be the test of a limited publication. (*Rushton* v. *Vitale* (1955), 218 F.2d 434.) To some degree so far as the plans of the structure as distinguished from the design of the building open to the general public gaze is concerned, the situation is similar to that of the author of a book who circulates it among his friends for their personal enjoyment which limited publication does not deprive him of his common-law copyright. (*Bobbs-Merrill Co.* v. *Straus* (1908), 210 U.S. 339 [28 S.Ct. 722, 52 L.Ed. 1086].)

In considering what constitutes publication of a common-law copyright, it is necessary to remember the fundamental difference between a common-law copyright and the federal statutory copyright. Common-law copyright is usually referred to as the right of first publication for once a work is published the owner's common-law protection is gone, and anyone may copy the work. (*Werckmeister* v. *American Lithographic Co., supra,* 134 F. 321, 324; *Stanley* v. *Columbia Broadcasting System, supra,* 35 Cal.2d 653, 661.) The common-law right even terminates upon the obtaining of a statutory copyright. " '. . . Speaking generally, common-law rights are limited to unpublished works, and all common-law property rights therein are lost on a publication . . . while statutory copyrights relate mainly to published works . . .' " (*Stanley* v. *Columbia Broadcasting System, supra,* 35 Cal.2d 653, 661.) A statutory copyright requires publication plus compliance with the copyright statutes. Common-law copyright may be regulated by the several states, statutory copyright solely by the federal government. Apparently California has regulated

common-law copyright by sections 980-985, Civil Code. Applicable to our problem are section 980 (heretofore quoted) and section 983. Section 980 deals with ownership. Subdivision (a) deals with "any composition in letters or art" and gives the author "ownership in the representation or expression thereof" against all persons except one who independently creates a similar composition. Subdivision (b) deals with the inventor "of any invention or design" and gives the designer ownership which "continues so long as the invention or design . . . remain in his possession." An architect's plans or designs would come within subdivision (b) rather than (a). While the Legislature has limited the common-law copyright to the time the architect has the plans in his possession, what would constitute a parting with that possession is a publication of the plans because section 983 dealing with the effect of publication, provides in subdivision (a): "If the owner of a composition in letters or art publishes it the same may be used in any manner by any person without responsibility to the owner . . . (b) If the owner of any invention or design intentionally makes it public, a copy or reproduction may be made public by any person without responsibility to the owner . . ." There seems to be a slight difference in the legislative wording in relation to ownership of common-law copyright in compositions, in letters or art, as compared to ownership in inventions or designs. Under section 980, subdivision (a), and section 983, subdivision (a), ownership of the copyright is exclusive except as against one who creates a similar independent composition and the ownership is lost the minute the work is produced. Under section 980, subdivision (b), and section 983, subdivision (b), ownership of a common-law copyright in an invention or design exists only as long as the design or invention remains in the possession of the inventor or designer and is lost the moment he intentionally makes it public. It is difficult to understand what this difference in wording means. In any event, it is clear that both as to ownership of compositions in letters and art and of inventions and designs, the Legislature has adopted the common-law copyright rule which causes the copyright to cease upon publication. There is nothing in either of these sections to indicate that the Legislature intended the type of publication which would cause a loss of the copyright to be any type of publication different from the type which at common law would cause a loss of the copyright. Under the common-law copyright

the moment an author published his book for general distribution he lost his copyright and any person could without penalty copy and publish that book word for word, but not if the publication were a limited one. When an architect builds a structure, it is somewhat similar to the author publishing a book. The structure is present for the public to see. As in the Weinstock, Lubin case, *supra,* 109 Cal. 529, the exterior is copyable by anyone with sufficient draftsmanship qualities. But as hereinabove pointed out, it is not a general publication of the detailed plans themselves.

As this is a case of first impression in California we must decide between adopting the rather limited view of the three cases in other jurisdictions above mentioned which held that filing in a municipal building department of architectural plans or the building of the structure therefrom, constitutes a general publication causing the loss of the architect's common-law copyright or adopting what to us appears the better reasoning and the more equitable result, namely, that both acts constitute a limited publication which does not cause such loss. We adopt the latter view and hold that in this case the plaintiff did not lose his common-law copyright.

In view of the court's statement in the minute order for judgment that plaintiff's plans were " 'copied,' and there was responsibility on the both defendants for copying them," (a somewhat similar finding appears in the findings) the judgment is reversed as to the issue of liability and remanded to the trial court for trial upon the issue of damages alone.

Wood (Fred B.), J., and Tobriner, J., concurred.

Respondents' petitions for a hearing by the Supreme Court were denied December 23, 1959.