[Civ. No. 28506. First Dist., Div. Two. Mar. 22, 1972.]

JAMES A. OAKES et al., Plaintiffs and Appellants, v.
SUELYNN CORPORATION et al., Defendants and Respondents.

## COUNSEL

Paul Burke for Plaintiffs and Appellants.

Bernard Petrie for Defendants and Respondents.

## OPINION

**ROUSE, J.**—Plaintiffs James Oakes and Gay McCline, each a licensed architect, brought this action to recover damages for the unauthorized use of certain plans for the renovation of a ferryboat. The defendants named in the complaint included Suelynn Corporation; Walter Landor, individually and doing business as Walter Landor & Associates; Richard Rosek; Alexis Tellis; and Morton Rader, individually and doing business as Chan-Rader & Associates. The complaint charged defendants with both copyright infringement and conversion of plaintiffs' plans.

Defendants, by way of answer, denied the material allegations of the complaint and raised three affirmative defenses. Defendants alleged that Suelynn Corporation had purchased the ferryboat *Klamath* in a bankruptcy proceeding and had thereby lawfully acquired the plans designed by plaintiffs; that any claim of plaintiffs should have been asserted in the bankruptcy proceeding and was barred by the order of the bankruptcy court approving the sale of the ferryboat. Defendants also alleged that plaintiffs' plans had been carried into execution and embodied in the ferryboat and that plaintiffs had thereby lost any protectible interest in said plans. As their third affirmative defense, defendants alleged that plaintiffs had exhibited the plans for public inspection.

The case was tried by a jury, and the following evidence was produced: Plaintiffs are licensed architects and were partners in the firm of Oakes and McCline. In 1959, they were employed by Harper Aviation to design an airport, motel and marina project in San Carlos. Pursuant to a written contract executed in June 1959, plaintiffs were to perform architectural services in connection with the project and were to be paid a percentage of the cost of construction. The contract provided that plaintiffs' plans were to remain their property whether or not they were carried into execution.

At the time the contract was executed, it was contemplated that a corporation to be known as Cal-West Aviation, Inc. would be formed and

that said corporation would become the successor in interest of Harper Aviation. Cal-West was in fact formed, and it succeeded to all the obligations and liabilities of Harper Aviation.

In October or November 1959, Cal-West became interested in purchasing the *Klamath,* which would be used as the main feature in the marina. The decision to purchase the boat was made in late 1959, and the boat was brought to San Carlos in July 1960. After considering various different uses for the boat, Cal-West decided to convert the boat into a restaurant and nightclub. Plaintiffs thereafter prepared complete plans and specifications for the renovation of the boat, and a building permit was issued in January 1961.

Construction commenced shortly thereafter and continued until May 1961, when Cal-West developed serious financial problems. The remodeling work was then approximately 90 percent completed as to the exterior of the boat and 50 or 60 percent completed as to the interior of the boat. Cal-West had paid plaintiffs a total of $21,000 for their services, of which $3,000 was compensation for their work on the ferryboat.

Bankruptcy proceedings ultimately ensued, and the trustee in bankruptcy attempted to find a buyer for the ferryboat. Plaintiff Oakes talked with one prospective buyer, showed him the plans for remodeling the boat and offered to supervise the completion of the remodeling work in return for payment for his services and the use of his plans. However, the sale did not materialize. Plaintiffs submitted a claim for their architect's fee in the bankruptcy proceeding, and the claim was liquidated.

In May 1963, defendant Suelynn Corporation purchased the ferryboat from the trustee in bankruptcy. Defendant Walter Landor was the president of Suelynn and owned all of the stock in said corporation. Suelynn Corporation had been formed to handle real estate projects and to work in conjunction with another family-owned corporation, Walter Landor & Associates. Suelynn Corporation purchased the ferryboat and then leased it to Walter Landor & Associates.

Defendant Alexis Tellis was employed by Walter Landor & Associates as its architectural coordinator, and he had complete charge of renovating the ferryboat *Klamath.* Some two or three weeks before Suelynn purchased the boat, the attorney for the trustee in bankruptcy furnished Tellis with a set of plaintiffs' plans for remodeling the boat. Tellis testified that he thought the plans were included in the purchase of the boat.

Suelynn Corporation had purchased the ferryboat for the purpose of converting it into an office building, and Tellis testified that plaintiffs'

plans were of value to defendants only insofar as they depicted the existing condition of the boat. Defendants had no intention of completing the restaurant and nightclub designed by plaintiffs, and Tellis employed defendant Morton Rader, an architect, and defendant Richard Rosek, a building designer, to design new plans for converting the boat into an office building. Plaintiffs' plans were used only to determine existing conditions on the boat and to avoid the necessity of remeasuring the various areas of the boat. Copies were made of those portions of plaintiffs' plans which depicted the outline of the various decks on the boat and a cross-section of the hull, and these copies were utilized by Rader and Rosek to establish the dimensions and measurements of the various areas of the boat. However, none of plaintiffs' design concepts were utilized.

In early December 1963, Tellis telephoned plaintiff Oakes and told him that he was in the process of remodeling the *Klamath* into an office building. He advised Oakes that he had one set of plaintiffs' plans and stated that he wished to obtain two additional sets and would be glad to pay the printing costs. Oakes stated that he would not furnish any additional sets of the plans unless Tellis would pay him a design fee for the use of the plans. Tellis refused to pay any such fee and made no further attempts to obtain additional copies of the plans.

In September 1964, an "open ship" party was held to celebrate the successful conversion of the *Klamath* into an office building. At Tellis' invitation, Oakes attended the "open ship" party and filed the instant action approximately two weeks later.

The testimony was conflicting as to the propriety of the limited use which defendants had made of plaintiffs' plans. Plaintiffs produced expert testimony to the effect that an architect's plans belong to him in the absence of an agreement to the contrary and that it is unethical to make any use of those plans without his consent. Defendants, on the other hand, produced expert testimony to the effect that it is an entirely proper practice to utilize an architect's plans to establish existing conditions without obtaining his consent.

Relative to the damages aspect of the case, plaintiff Oakes testified that his plans had a value of $15,000. However, defendants testified that their limited use of plaintiffs' plans had saved them no more than $640, the amount which it would have cost them to remeasure the boat.

At the conclusion of the trial, the court granted defendants' motion to strike the conversion count of the complaint. The case was submitted to the jury on the count charging defendants with copyright infringement, and the jury returned a verdict for defendants. Judgment on verdict was

duly entered, and plaintiffs thereafter moved for a new trial and for judgment notwithstanding the verdict. The court denied both motions, and plaintiffs then filed notice of appeal from the judgment.

Plaintiffs' first contention on appeal is that the evidence is insufficient as a matter of law to support the verdict for defendants. Plaintiffs therefore argue that the trial court ought to have granted their motion for judgment notwithstanding the verdict or their motion for new trial and that, in any event, the judgment must now be reversed since it is contrary to law.

Plaintiffs assert that the evidence conclusively establishes that defendants did make some use of their plans without their consent. Plaintiffs concede that defendants produced considerable testimony to the effect that it was the established practice among architects to determine the existing conditions of a structure by referring to the plans of another architect without first obtaining his permission to do so. However, plaintiffs contend that this evidence furnishes no valid basis for the defense verdict because any such practice would be violative of the copyright law. In support of their position, plaintiffs rely upon Civil Code, section 980, subdivision (b), and *Smith* v. *Paul* (1959) 174 Cal.App.2d 744 [345 P.2d 546].

Civil Code, section 980, subdivision (b), provides in pertinent part that "The inventor or proprietor of any invention or design . . . has an exclusive ownership therein, and in the representation or expression thereof, which continues so long as the invention or design and the representations or expressions thereof made by him remain in his possession."

In *Smith* v. *Paul, supra,* at pages 746-747, 757, the court held that section 980, subdivision (b), accepted the traditional theory of protectible property under common law copyright and that said section was applicable to architectural designs, plans and specifications.

The factual situation in the instant case clearly does not fall within the purview of Civil Code, section 980, subdivision (b) or the holding in *Smith* v. *Paul.* ■ Civil Code, section 980, subdivision (b), protects an "invention" or "design," and it is settled that this protection extends only to the product of a creative mind and that in the absence of originality, there is no protectible property. (*Weitzenkorn* v. *Lesser* (1953) 40 Cal.2d 778, 786 [256 P.2d 947]; *Golding* v. *R.K.O. Pictures, Inc.* (1950) 35 Cal.2d 690, 695 [221 P.2d 95].)

In *Smith* v. *Paul, supra,* the defendant had appropriated to his own use the plaintiff's original design for a house, and it was apparent that a violation of the copyright law had occurred. As the court aptly pointed

out, "The architect expresses his thoughts and reveals his artistic personality in his plans, drawings and designs. In this respect, he is similar to all other creators of intellectual properties." (*Smith* v. *Paul, supra,* at p. 748.)

■ In the case at bar, the evidence shows that defendants did not appropriate any of plaintiffs' original design concepts for remodeling the ferryboat into a restaurant and nightclub, but that they merely used plaintiffs' plans to establish existing conditions on the boat and avoid the necessity of remeasuring the various areas of the boat. Since plaintiffs obviously had no protectible interest in the measurements of an existing structure, the evidence furnishes ample support for the jury's verdict in favor of defendants on the copyright count.

Plaintiffs next contend that the trial court committed prejudicial error in striking the conversion count of their complaint and refusing to give plaintiffs' proposed instructions on conversion. This argument is untenable.

Conversion has been defined as any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein. (*Itano* v. *Colonial Yacht Anchorage* (1968) 267 Cal.App.2d 84, 89 [72 Cal.Rptr. 823]; *Bufano* v. *City & County of San Francisco* (1965) 233 Cal.App.2d 61, 68 [43 Cal.Rptr. 223].) ■ In order to establish a conversion, the plaintiff must show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of his property. (*Zaslow* v. *Kroenert* (1946) 29 Cal.2d 541, 550 [176 P.2d 1]; *Itano* v. *Colonial Yacht Anchorage, supra,* at p. 89.)

■ In the instant case, the evidence fails to disclose any intention on the part of defendants to convert plaintiffs' plans or to exercise ownership over them or to prevent plaintiffs from taking possession of them. Defendants lawfully came into possession of plaintiffs' plans when the attorney for the trustee in bankruptcy gave them to defendant Tellis shortly before the ferryboat was sold to Suelynn Corporation. Defendants at no time used the plans in such a way as to interfere with a protectible interest of plaintiffs therein. They referred to the plans only to establish the existing conditions and measurements of the boat. At no time did defendants ever deny plaintiffs' ownership of the plans. Tellis contacted plaintiff Oakes personally and requested additional sets of the plans. Although Tellis made it clear to Oakes that he already had one set of the plans in his possession, plaintiffs made no demand, then or subsequently, for the return of the plans in defendants' possession.

In addition to plaintiffs' failure to establish that defendants possessed the requisite intent to convert plaintiffs' plans, there is another reason why the trial court was correct in striking the conversion count. ▮ The detriment caused by the wrongful conversion of personal property is presumed to be the value of the property at the time of conversion and a fair compensation for the time and money expended in pursuit of the property. (Civ. Code, § 3336.) ▮ It is apparent that the plaintiffs in the instant action were not seeking to recover the value of the particular items of personal property in defendants' possession but were seeking to recover damages for the value of a creative design allegedly appropriated by defendants. Plaintiffs made no attempt whatever to establish that the personal property in defendants' possession, consisting of one set of plaintiffs' plans, was of any value in itself. It may be inferred from the evidence that the value of one set of plans would be equal to the printing costs. Plaintiffs likewise made no attempt to show that they suffered any detriment from the loss of the one set of plans. The gravamen of plaintiffs' cause of action was the allegedly wrongful appropriation by defendants of a creative idea or design. The trial court was obviously correct in holding that the case should be submitted to the jury solely on the theory of copyright infringement and not on the conversion count.

▮ Plaintiffs contend that the trial court erred in excluding from evidence a written memorandum which was made by plaintiff Oakes and which contained a summary of a conversation which he had with a prospective buyer of the *Klamath*. The record shows that the court excluded the memorandum from evidence after defense counsel objected on the ground that it contained self-serving hearsay statements by plaintiff Oakes. However, the court ruled that Oakes could use the memorandum to refresh his memory, and Oakes then testified in considerable detail as to his conversation with the prospective buyer.

Plaintiffs have made no attempt to explain how the introduction of the memorandum itself would have benefited their case. Since Oakes was allowed to refer to the memorandum and to testify to his entire conversation with the prospective buyer, no conceivable prejudice could have resulted from the exclusion of the document itself.

▮ Plaintiffs also assert that the court erroneously excluded from evidence a comparative study made by plaintiff Oakes of similarities between plaintiffs' plans and defendants' plans. Here again, the introduction of the study would merely have been cumulative, since plaintiff Oakes testified at great length from the study and explained all of the similarities which he had found in the two sets of plans. Moreover, de-

fendants are correct in asserting that the study was properly excluded from evidence because it contained conclusionary and argumentative material.

■ Plaintiffs contend that the trial court erred in denying the jury's request to have the testimony of William Allen, defendants' architectural expert, reread to them. It suffices to point out that this ruling could only have been beneficial to plaintiffs since Allen's testimony was highly favorable to the defense.

Plaintiffs complain of certain remarks made by the trial court when the jury inquired as to the effect of the bankruptcy proceedings upon plaintiffs' contract with Harper Aviation and its successor in interest, Cal-West. Plaintiffs assert that in the course of advising the jurors not to concern themselves with the effect of the bankruptcy proceedings, the court used somewhat ambiguous language which may have led the jurors to believe that they were to disregard the existence of plaintiffs' contract and the clause wherein plaintiffs retained ownership of their plans. This contention is wholly without merit. The remarks made by the trial court are neither ambiguous nor susceptible of the interpretation suggested by plaintiffs.

■ Plaintiffs contend that the court erred in refusing to give their proposed instruction to the effect that the bankruptcy proceedings could not operate to divest plaintiffs of the ownership of their plans.

The trial court, as noted above, told the jury to disregard the bankruptcy proceedings altogether. The court also instructed the jury that an architect who created an architectural design was the exclusive owner of the design as long as there was no distribution of copies of the design with the intent to dedicate the contents to the public. Plaintiffs' profferred instruction relative to the effect of the bankruptcy proceedings was clearly unnecessary.

Plaintiffs' final contention is that the judgment is incomplete and does not constitute a valid final judgment because it disposed only of the copyright infringement count of plaintiffs' complaint and makes no reference to the conversion count.

Plaintiffs are correct in asserting that the judgment was based solely upon the jury verdict on the copyright count and that it made no reference to the conversion count which the court had previously ordered stricken. In *Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517 [322 P.2d 933], the court was confronted with a similar situation where the trial court dismissed one count of the complaint after sustaining a demurrer thereto

and then tried the remaining two counts and entered a judgment on those counts only. The appellate court held that this judgment was not a complete judgment in that it did not dispose of all three counts of the complaint, and that one solution to the problem would be to dismiss the appeal with instructions to the trial court to amend the judgment by including a disposition of the third count. However, the court rejected this approach as unduly circuitous, stating: "That would then require the parties to rebrief the question as to whether the third cause of action stated a cause of action—the very point that is fully briefed in the briefs now on file. This seems to be an unnecessarily dilatory and circuitous method of reaching a proper result. It should not be adopted unless it is the only proper method of reaching a fair result. We think there is another method of arriving at a result that is fair to both the parties to this appeal. Instead of instructing the trial court to amend its judgment on the first two causes of action by adding to it the dismissal of the third cause of action, there would seem to be no legal reason why that result should not be reached directly by this court. All of the pertinent documents are now before this court. Therefore, in the interests of justice and to prevent unnecessary delay we order that the judgment of November 28, 1956, be and it is amended by adding thereto a paragraph dismissing the third cause of action based on the sustaining of the demurrer without leave to amend." (P. 524.) The *Gombos* procedure has repeatedly been followed in subsequent cases. (*Shepardson* v. *McLellan* (1963) 59 Cal.2d 83, 88-89 [27 Cal.Rptr. 884, 378 P.2d 108]; *Carlson, Collins, Gordon & Bold* v. *Banducci* (1967) 257 Cal.App.2d 212, 219 [64 Cal.Rptr. 915]; *Coronet Credit Corp.* v. *West Thrift Co.* (1966) 244 Cal.App.2d 631, 634 [53 Cal.Rptr. 433]; *Schwartz* v. *Shapiro* (1964) 229 Cal.App.2d 238, 246-247 [40 Cal.Rptr. 189]; *Levizon* v. *Harrison* (1961) 198 Cal.App.2d 274, 284 [18 Cal.Rptr. 284]; *Tsarnas* v. *Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629].)

██ The *Gombos* procedure is obviously an appropriate one to utilize in the case at bar. The trial court properly struck the conversion count as unsupported by the evidence, and it was only through inadvertence that a dismissal of said count was omitted from the judgment.

Therefore, it is ordered that the judgment be amended by adding thereto a paragraph dismissing the conversion count of the complaint. The judgment, as so amended, is affirmed.

Taylor, P. J., and Kane, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 18, 1972.