[S.F. No. 23356. Oct. 4, 1976.]

HAZEL TENHET, Plaintiff and Appellant, v.
W. W. BOSWELL, JR., Defendant and Respondent.

COUNSEL

Moran, Stringham & Rogers and William J. Kadi for Plaintiff and Appellant.

James G. McCain for Defendant and Respondent.

**OPINION**

**MOSK, J.**—A joint tenant leases his interest in the joint tenancy property to a third person for a term of years, and dies during that term. We conclude that the lease does not sever the joint tenancy, but expires upon the death of the lessor joint tenant.

Raymond Johnson and plaintiff Hazel Tenhet owned a parcel of property as joint tenants.[1] Assertedly without plaintiff's knowledge or consent, Johnson leased the property to defendant Boswell for a period of 10 years at a rental of $150 per year with a provision granting the lessee an "option to purchase."[2] Johnson died some three months after execution of the lease, and plaintiff sought to establish her sole right to possession of the property as the surviving joint tenant. After an unsuccessful demand upon defendant to vacate the premises, plaintiff brought this action to have the lease declared invalid. The trial court sustained demurrers to the complaint, and plaintiff appealed from the ensuing judgment of dismissal.

I

Before addressing the primary issue, we must determine whether the appeal should be dismissed because of the "one final judgment" rule. The problem arises from the trial court's failure to dispose of all five causes of action set forth in the third amended complaint. The court granted a motion to strike the fourth and fifth causes and sustained demurrers to the second and third causes without leave to amend. But the court made no express ruling on the first cause of action, which sought declaratory relief and damages.

Generally, an appeal may be taken only from the final judgment in an entire action. (*Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 520-523 [322 P.2d 933]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 36, p. 4050.) A party may not normally appeal from a judgment on one of his causes of action if determination of any remaining cause is still pending. (*U. S. Financial* v. *Sullivan* (1974) 37 Cal.App.3d 5, 11 [112 Cal.Rptr. 18]; *Gombos* v. *Ashe, supra,* 158 Cal.App.2d at pp. 520-523.)

---

[1] An "Affidavit—Death of Joint Tenant," executed by plaintiff and appended as an exhibit to plaintiff's third amended complaint, indicates that the property was acquired by a joint tenancy deed "executed by Jettie N. Johnson to Raymond Johnson and Hazel Johnson [now known as Hazel Tenhet] as joint tenants." Plaintiff avers by the same document that the value of the property, which allegedly includes a dwelling house and lot, did not exceed $3,500 at the time of the death of the lessor in 1971.

[2] The lease did not disclose that the lessor possessed only a joint interest in the property. To the contrary, the "option to purchase" granted to the lessee, which might more accurately be described as a right of first refusal, implied that the lessor possessed a fee simple. It provided in part: "Lessee is given a first exclusive right, privilege and option to purchase the house and lot covered by this lease. . . . [¶] If so purchased, Lessor will convey title by grant deed on the usual form subject only to easements or rights of way of record and liens or encumbrances specifically agreed to by and between Lessor and Lessee. [¶] Lessor shall furnish Lessee with a policy of title insurance at Lessor's cost. . . ."

However, the rule has been modified in cases in which the trial court's failure to dispose of all causes of action results from inadvertence or mistake rather than an intention to retain the remaining causes of action for trial. The leading case of *Gombos* v. *Ashe* is a prime example. There, plaintiffs injured in an automobile accident filed a complaint setting forth two causes of action seeking compensatory damages and a third praying for punitive damages. The trial court sustained a demurrer on the punitive damage issue, and the case went to trial on the compensatory damage causes. Plaintiffs won a jury verdict, but the judgment failed to dispose of the punitive damage issue. On plaintiffs' appeal from the ruling on that issue, the court, speaking through Justice Peters, observed that the order sustaining the demurrer was not a final judgment and thus not appealable. The normal procedure, noted the court, would be to dismiss the appeal with instructions to the trial court to amend its judgment by disposing of the punitive damage issue. However, the court continued, "That would then require the parties to rebrief the question as to whether the [punitive damage] cause of action stated a cause of action—the very point that is fully briefed in the briefs now on file. This seems to be an unnecessarily dilatory and circuitous method of reaching a proper result. It should not be adopted unless it is the only proper method of reaching a fair result." (*Id.* at p. 524.)

As an alternative, the *Gombos* appellate court itself amended the judgment on the compensatory damage verdict to include a paragraph dismissing the punitive damage cause of action. (*Ibid.*) The judgment on the jury verdict thus became final, and the court could properly hear the appeal. This method of preserving appeals has been routinely followed in subsequent cases. (See, e.g., *Oakes* v. *Suelynn Corp.* (1972) 24 Cal.App.3d 271, 281 [100 Cal.Rptr. 838] (where the trial court, in a damage action, properly struck a conversion count but inadvertently failed to dismiss that count in rendering judgment on a jury verdict on a separate count, judgment was amended to include such dismissal); *Tsarnas* v. *Bailey* (1960) 179 Cal.App.2d 332, 337 [3 Cal.Rptr. 629] (where the intention of the trial court was clear from its judgment on a complaint, judgment was amended to include disposition of a cross-complaint in the same action).)

The instant case also calls for application of the *Gombos* procedure. The trial court, apparently believing that a cause of action seeking declaratory relief could not be disposed of by judgment on the pleadings (but see 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 731,

pp. 2351-2352), made no express ruling on the first cause of action. However, the court left no doubt that it considered plaintiff's position insupportable. It sustained demurrers on the other causes of action based on identical facts, and stated, "The Court agrees with . . . defendant to the effect that a co-tenant may make a valid lease to the extent of his own interest even though the lease is to commence on the death of the lessor." In these circumstances little would be gained by ordering the court to rule on the first cause of action, for the outcome is preordained. Not only is the position of the court clear, but both sides have briefed the primary issues, and both urge us to decide the case. We shall therefore amend the judgment by ruling in favor of defendant on the first cause of action seeking declaratory relief and damages. We now turn to the merits of the judgment as thus amended.

## II

An understanding of the nature of a joint interest in this state is fundamental to a determination of the question whether the present lease severed the joint tenancy. ▪ Civil Code section 683 provides in part: "A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy. . . ." This statute, requiring an express declaration for the creation of joint interests, does not abrogate the common law rule that four unities are essential to an estate in joint tenancy: unity of interest, unity of time, unity of title, and unity of possession. (See *Hammond* v. *McArthur* (1947) 30 Cal.2d 512, 514 [183 P.2d 1]; *McDonald* v. *Morley* (1940) 15 Cal.2d 409, 412 [101 P.2d 690, 129 A.L.R. 810]; 2 Blackstone, Commentaries *180-182.)

The requirement of four unities reflects the basic concept that there is but one estate which is taken jointly; if an essential unity is destroyed the joint tenancy is severed and a tenancy in common results. (*Swartzbaugh* v. *Sampson* (1936) 11 Cal.App.2d 451, 454 [54 P.2d 73]; 2 Am. Law of Prop. (1952) § 6.2, p. 9.) Accordingly, one of two joint tenants may unilaterally terminate the joint tenancy by conveying his interest to a third person. (*Delanoy* v. *Delanoy* (1932) 216 Cal. 23, 26 [13 P.2d 513]; *Green* v. *Skinner* (1921) 185 Cal. 435, 438 [197 P. 60].) ▪ Severance of the joint tenancy, of course, extinguishes the principal feature of that estate—the *jus accrescendi* or right of survivorship.[3] Thus, a joint tenant's

---

[3] The rule is, *nihil de re accrescit ei, qui nihil in re quando jus accrescerit habet.* (2 Co. Litt. *188.) Literally, no part of the estate accrues to him who has nothing in the estate when the right accrues. In modern parlance, what you have is what you get.

right of survivorship is an expectancy that is not irrevocably fixed upon the creation of the estate (*Gwinn* v. *Commissioner* (1932) 287 U.S. 224, 228 [77 L.Ed. 270, 274, 53 S.Ct. 157] (interpreting California law)); it arises only upon success in the ultimate gamble—survival—and then only if the unity of the estate has not theretofore been destroyed by voluntary conveyance (*Delanoy* v. *Delanoy, supra*), by partition proceedings (Code Civ. Proc., § 752; *Teutenberg* v. *Schiller* (1955) 138 Cal.App.2d 18, 22 [291 P.2d 53], cf. *Lazzarevich* v. *Lazzarevich* (1952) 39 Cal.2d 48, 50 [244 P.2d 1]), by involuntary alienation under an execution (*Young* v. *Hessler* (1945) 72 Cal.App.2d 67, 69 [164 P.2d 65]; *Zeigler* v. *Bonnell* (1942) 52 Cal.App.2d 217, 219 [126 P.2d 118]), or by any other action which operates to sever the joint tenancy.

Our initial inquiry is whether the partial alienation of Johnson's interest in the property effected a severance of the joint tenancy under these principles. It could be argued that a lease destroys the unities of interest and possession because the leasing joint tenant transfers to the lessee his present possessory interest and retains a mere reversion. (See *Alexander* v. *Boyer* (1969) 253 Md. 511 [253 A.2d 359, 365].) Moreover, the possibility that the term of the lease may continue beyond the lifetime of the lessor is inconsistent with a complete right of survivorship.

On the other hand, if the lease entered into here by Johnson and defendant is valid only during Johnson's life, then the conveyance is more a variety of life estate *pur autre vie* than a term of years. Such a result is inconsistent with Johnson's freedom to alienate his interest during his lifetime.

We are mindful that the issue here presented is "an ancient controversy, going back to Coke and Littleton." (2 Am. Law of Prop. (1952) § 6.2, p. 10.) Yet the problem is like a comet in our law: though its existence in theory has been frequently recognized, its observed passages are few.[4] Some authorities support the view that a lease by a joint tenant to a third person effects a complete and final severance of the joint tenancy. (*Alexander* v. *Boyer* (1969) *supra*, 253 A.2d 359, 365; 2 Am. Law of Prop. (1952) § 6.2, p. 10; Freeman on Cotenancy and Partition (2d ed. 1886) § 30; Comment (1937) 25 Cal.L.Rev. 203, 208; Swenson & Degnan,

---

[4]For discussions of the question, see, e.g., Comment (1973) 61 Cal.L.Rev. 231; Comment (1937) 25 Cal.L.Rev. 203, 206-209; Swenson & Degnan, *Severance of Joint Tenancies* (1954) 38 Minn.L.Rev. 466, 472-474; Comment (1957) 8 Hastings L.J. 290, 293; Comment (1948) 21 So.Cal.L.Rev. 295, 297; 2 Tiffany, The Law of Real Property (3d ed. 1939) section 425, page 210.

*Severance of Joint Tenancies* (1954) 38 Minn.L.Rev. 466, 474.) Such a view is generally based upon what is thought to be the English common law rule. (See *Napier* v. *Williams* [1911] 1 Ch. 361; *Cowper* v. *Fletcher* (1865) 6 B. & S. 464, 472; *Doe* ex dem. *Marsack* v. *Read* (1810) 12 East 57; *Gould* v. *Kemp* (1834) 39 Eng.Rep. 959, 962; *Clerk* v. *Clerk* (1694) 23 Eng. Rep. 809; Littleton's Tenures, § 289; *Swartzbaugh* v. *Sampson* (1936) *supra,* 11 Cal.App.2d 451, 454; Annot. (1959) 64 A.L.R.2d 918, 932; cf. *Palmer* v. *Rich* [1897] 1 Ch. 134, 142-143; but see 27 Halsbury's Laws of England (2d ed. 1937) § 1144, p. 662, fn. (*1*); Co. Litt. *185a.)

Others adopt a position that there is a temporary severance during the term of the lease. If the lessor dies while the lease is in force, under this view the existence of the lease at the moment when the right of survivorship would otherwise take effect operates as a severance, extinguishing the joint tenancy. If, however, the term of the lease expires before the lessor, it is reasoned that the joint tenancy is undisturbed because the joint tenants resume their original relation. (See, e.g., 2 Reeves on Real Property (1909) § 680, p. 965; Comment (1937) 25 Cal.L.Rev. 203, 208-209; cf. 1 Platt on Leases (1847) pp. 130-131.) The single conclusion that can be drawn from centuries of academic speculation on the question is that its resolution is unclear.

■ As we shall explain, it is our opinion that a lease is not so inherently inconsistent with joint tenancy as to create a severance, either temporary or permanent. (See *Hammond* v. *McArthur* (1947) *supra,* 30 Cal.2d 512, 516 (dictum); *Swartzbaugh* v. *Sampson* (1936) *supra,* 11 Cal.App.2d 451, 454; 15 Cal.Jur.3d, Cotenancy and Joint Ownership, § 16, p. 736; 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 17, p. 111; 1 Ogden's Revised Cal. Real Property Law (1974) § 7.20; 1 Platt on Leases (1847) pp. 130-131; 27 Halsbury's Laws of England (2d ed. 1937) § 1144, p. 662, fn. (*1*); Co. Litt. *185a.)

Under Civil Code sections 683 and 686 a joint tenancy must be expressly declared in the creating instrument, or a tenancy in common results. This is a statutory departure from the common law preference in favor of joint tenancy. (*Abbey* v. *Lord* (1959) 168 Cal.App.2d 499, 503 [336 P.2d 226]; *Reiss* v. *Reiss* (1941) 45 Cal.App.2d 740, 747 [114 P.2d 718]; *Swartzbaugh* v. *Sampson* (1936) *supra,* 11 Cal.App.2d 451, 454; see *Frisbie* v. *Marques* (1870) 39 Cal. 451, 453-454.)[5] Inasmuch as the estate

[5]Because the feudal system was opposed to a division of tenures, estates in joint tenancy were favored at common law. Like the laws of primogeniture, joint tenancy was founded "on the principle of the aggregation of landed estates in the hands of a few, and

arises only upon express intent, and in many cases such intent will be the intent of the joint tenants themselves, we decline to find a severance in circumstances which do not clearly and unambiguously establish that either of the joint tenants desired to terminate the estate. (See Comment (1973) 61 Cal.L.Rev. 231, 248; Note (1948) 36 Cal.L.Rev. 133, 135.)

If plaintiff and Johnson did not choose to continue the joint tenancy, they might have converted it into a tenancy in common by written mutual agreement. (See, e.g., *Smith* v. *Morton* (1972) 29 Cal.App.3d 616, 621 [106 Cal.Rptr. 52]; 15 Cal.Jur.3d, Cotenancy and Joint Ownership, § 15, p. 733; 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 19, p. 112.) They might also have jointly conveyed the property to a third person and divided the proceeds. Even if they could not agree to act in concert, either plaintiff or Johnson might have severed the joint tenancy, with or without the consent of the other, by an act which was clearly indicative of an intent to terminate, such as a conveyance of her or his entire interest. Either might also have brought an action to partition the property, which, upon judgment, would have effected a severance. Because a joint tenancy may be created only by express intent, and because there are alternative and unambiguous means of altering the nature of that estate, we hold that the lease here in issue did not operate to sever the joint tenancy.

### III

Having concluded that the joint tenancy was not severed by the lease and that sole ownership of the property therefore vested in plaintiff upon her joint tenant's death by operation of her right of survivorship, we turn next to the issue whether she takes the property unencumbered by the lease.

In arguing that plaintiff takes subject to the lease, defendant relies on *Swartzbaugh* v. *Sampson* (1936) *supra,* 11 Cal.App.2d 451. In that case, one of two joint tenants entered into lease agreements over the objection of his joint tenant wife, who sought to cancel the leases. The court held in favor of the lessor joint tenant, concluding that the leases were valid.

opposed to their division among many persons." (*Siberell* v. *Siberell* (1932) 214 Cal. 767, 771 [7 P.2d 1003], quoting *DeWitt* v. *San Francisco* (1852) 2 Cal. 289, 297.) Despite the obsolescence of its original purpose, the estate of joint tenancy remains a popular form of property ownership in California (see Griffith, *Community Property in Joint Tenancy Form* (1961) 14 Stan.L.Rev. 87, 88-89) on the ground that it avoids the delay and administrative expenses of probate.

But the suit to cancel the lease in *Swartzbaugh* was brought during the lifetime of both joint tenants, not as in the present case after the death of the lessor. Significantly, the court concluded that "a lease to all of the joint property by one joint tenant is not a nullity but is a valid and supportable contract *in so far as the interest of the lessor in the joint property is concerned.*" (Italics added; *id.* at p. 458.) During the lifetime of the lessor joint tenant, as the *Swartzbaugh* court perceived, her interest in the joint property was an undivided interest in fee simple that encompassed the right to lease the property.

By the very nature of joint tenancy, however, the interest of the nonsurviving joint tenant extinguishes upon his death. And as the lease is valid only "in so far as the interest of the lessor in the joint property is concerned," it follows that the lease of the joint tenancy property also expires when the lessor dies.

This conclusion is borne out by decisions in this state involving liens on and mortgages of joint tenancy property. In *Zeigler* v. *Bonnell* (1942) *supra,* 52 Cal.App.2d 217, the Court of Appeal ruled that a surviving joint tenant takes an estate free from a judgment lien on the interest of a deceased cotenant judgment debtor. The court reasoned that "The right of survivorship is the chief characteristic that distinguishes a joint tenancy from other interests in property. . . . The judgment lien of [the creditor] could attach only to the interest of his debtor . . . . That interest terminated upon [the debtor's] death." (*Id.* at pp. 219-220.) After his death "the deceased joint tenant had no interest in the property, and his judgment creditor has no greater rights." (*Id.* at p. 220.)

A similar analysis was followed in *People* v. *Nogarr* (1958) 164 Cal.App.2d 591 [330 P.2d 858, 68 A.L.R.2d 992], which held that upon the death of a joint tenant who had executed a mortgage on the tenancy property, the surviving joint tenant took the property free of the mortgage. The court reasoned (at p. 594) that "as the mortgage lien attached only to such interest as [the deceased joint tenant] had in the real property[,] when his interest ceased to exist the lien of the mortgage expired with it." (Accord, *Hamel* v. *Gootkin* (1962) 202 Cal.App.2d 27 [20 Cal.Rptr. 372] (applying the *Nogarr* holding to a trust deed).)

As these decisions demonstrate, a joint tenant may, during his lifetime, grant certain rights in the joint property without severing the tenancy. But when such a joint tenant dies his interest dies with him, and any

encumbrances placed by him on the property become unenforceable against the surviving joint tenant. For the reasons stated a lease falls within this rule.

Any other result would defeat the justifiable expectations of the surviving joint tenant. Thus if A agrees to create a joint tenancy with B, A can reasonably anticipate that when B dies A will take an unencumbered interest in fee simple. During his lifetime, of course, B may sever the tenancy or lease his interest to a third party. But to allow B to lease for a term continuing *after* his death would indirectly defeat the very purposes of the joint tenancy. For example, for personal reasons B might execute a 99-year lease on valuable property for a consideration of one dollar a year. A would then take a fee simple on B's death, but would find his right to use the property—and its market value—substantially impaired. This circumstance would effectively nullify the benefits of the right of survivorship, the basic attribute of the joint tenancy.

On the other hand, we are not insensitive to the potential injury that may be sustained by a person in good faith who leases from one joint tenant. In some circumstances a lessee might be unaware that his lessor is not a fee simple owner but merely a joint tenant, and could find himself unexpectedly evicted when the lessor dies prior to expiration of the lease. This result would be avoided by a prudent lessee who conducts a title search prior to leasing, but we appreciate that such a course would often be economically burdensome to the lessee of a residential dwelling or a modest parcel of property. Nevertheless, it must also be recognized that every lessee may one day face the unhappy revelation that his lessor's estate in the leased property is less than a fee simple. For example, a lessee who innocently rents from the holder of a life estate is subject to risks comparable to those imposed upon a lessee of joint tenancy property.

More significantly, we cannot allow extraneous factors to erode the functioning of joint tenancy. The estate of joint tenancy is firmly embedded in centuries of real property law and in the California statute books. Its crucial element is the right of survivorship, a right that would be more illusory than real if a joint tenant were permitted to lease for a term continuing after his death. Accordingly, we hold that under the facts alleged in the complaint the lease herein is no longer valid.

It is ordered that the judgment dated June 18, 1973, be and it is hereby amended to read as follows:

"It is ordered, adjudged and decreed that Defendant, W. W. Boswell, Jr., have judgment against Plaintiff of dismissal of said First, Second and Third Causes of Action of said Third Amended Complaint and the Plaintiff, with respect to said Defendant, take nothing by said First, Second and Third Causes of Action of said Third Amended Complaint."

As amended, the judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Clark, J., and Richardson, J., concurred.