[Civ. No. 17886. Third Dist. Aug. 12, 1980.]

Estate of EVELYN BAKKEN DEAN, Deceased.
LYNN DEAN, Petitioner and Appellant, v.
JAMES AUBLE, as Executor, etc., Objector and Respondent.

**COUNSEL**

Dopkins & Braunstein and Jerrold B. Braunstein for Petitioner and Appellant.

John L. Giordano for Objector and Respondent.

**OPINION**

**EVANS, J.**—Two questions are presented by this appeal. First, did petitioner's (hereafter plaintiff) remarriage destroy his right to a probate

homestead, and second, did the decedent effectively terminate a joint tenancy by conveyances to a third person?

We answer each question affirmatively.

In 1968, plaintiff and his wife purchased a dwelling as joint tenants. On February 7, 1976, Mrs. Dean executed a deed conveying her interest in the property to a third person who reconveyed the interest to Mrs. Dean. No consideration was given for these transactions, which were apparently made for the sole purpose of destroying the joint tenancy. Mr. Dean did not consent to the conveyances nor was he aware of them until after his wife's death. On February 28, 1976, Mrs. Dean died, leaving her entire estate to the Department of Radiology at Stanford School of Medicine. Mr. Dean remarried on August 8, 1976; following that remarriage he filed an action to quiet title to the real property and a petition for an order setting apart a probate homestead.

The probate court denied plaintiff's petition to set apart a probate homestead, finding that plaintiff's remarriage prior to filing the petition precluded it.

In plaintiff's quiet title action, the court found that whether the Deans held the property as tenants in common or as community property (after the termination of the joint tenancy), the decedent, Mrs. Dean, had the right to devise her half interest in any manner she chose, and entered judgment against plaintiff.

 Probate Code section 661 provides that a probate homestead must be set aside for the use of a surviving spouse when a homestead has not previously been set apart. (*Estate of Rosenaur* (1951) 107 Cal. App.2d 461, 462 [237 P.2d 17].) A devise of the deceased spouse's property is subject to this homestead right of the survivor. (*Estate of Davis* (1948) 86 Cal.App.2d 263, 264-265 [194 P.2d 713].) However, the right to a probate homestead is lost once the surviving spouse loses the status upon which the right was based. (*Estate of Blair* (1954) 42 Cal.2d 728, 732 [269 P.2d 612]; *In re Still* (1897) 117 Cal. 509, 514 [49 P. 463].) It has been judicially established that the right of a widow to a probate homestead is lost if she remarries prior to seeking the homestead. (*Ibid.*; *Estate of Moore* (1881) 57 Cal. 437, 443.)

Plaintiff acknowledges the preceding rule but contends it applies only to widows and that a widower should be treated differently and not lose

the right to a probate homestead upon remarriage. As a basis for the establishment of a distinction between widows and widowers, plaintiff asserts that "...a woman being entitled to support from her husband, no longer needs the protection of the homestead since presumably her new husband will care for her" and strongly infers that a husband is not entitled to such support. His argument ignores the present state of the law which places an obligation on both husband and wife to support each other during marriage. (Civ. Code, §§ 5100, 5132.) As was stated in *Disabled & Blind Action Committee of Cal. v. Jenkins* (1974) 44 Cal.App.3d 74, 86 [118 Cal.Rptr. 536], "[i]t is the law of California that each spouse must support the other spouse, and it follows that he or she must use whatever income and resources are available for this purpose." (See also *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 83 [154 Cal.Rptr. 413, 592 P.2d 1165].)

Plaintiff's reliance on the *Estate of Davis, supra,* 86 Cal.App.2d 263, in support of his contention is misplaced. The issue facing us was not discussed or decided by the *Davis* court. The case is not factually apposite. Conversely, the decision in *Estate of Blair, supra,* 42 Cal.2d at page 732, is in point. Although at issue was a widow's right to a probate homestead, it is significant that the court failed to distinguish a widower's right to a probate homestead from that of a widow. The court stated, "...the right to a family allowance or probate homestead is lost *when the one for whom it is asked* has lost the status upon which the right depends." (Italics ours; *ibid.*)

We do not perceive any persuasive reason to extend a widower more extensive homestead rights than those allowed a widow. (See *Sail'er Inn, Inc. v. Kirby* (1971) 5 Cal.3d 1, 20 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351].)

■ Plaintiff's appeal from the judgment in the quiet title proceeding, viewed in the light of the common law and statutory history of joint tenancy, is frivolous. (See *Tenhet v. Boswell* (1976) 18 Cal.3d 150, 155 [133 Cal.Rptr. 10, 554 P.2d 330]; *Rupp v. Kahn* (1966) 246 Cal.App. 2d 188, 195 [55 Cal.Rptr. 108]; *Wilk v. Vencill* (1947) 30 Cal.2d 104, 108-109 [180 P.2d 351].)

It is indisputable that each joint tenant, for whatever reason, has the power to convey his or her separate estate without the knowledge or consent of the other joint tenant, thereby destroying the joint tenancy.

(*Delanoy* v. *Delanoy* (1932) 216 Cal. 23, 26 [13 P.2d 513]; *Estate of Harris* (1937) 9 Cal.2d 649, 658 [72 P.2d 873].) The tenancy may be destroyed unilaterally by conveyance to a "straw man" grantee and the conveyance back to the grantor. In such circumstances, the joint tenancy is not revived. (*Hammond* v. *McArthur* (1947) 30 Cal.2d 512 [183 P.2d 1].) The former joint tenants become tenants in common.

In *Riddle* v. *Harmon* (1980) 102 Cal.App.3d 524 [162 Cal.Rptr. 530], the court exhaustively chronicled the nature of joint tenancy, its history, means of creation, and destruction, and concluded that a joint tenant has the absolute right and power to unilaterally destroy a joint tenancy by a series of conveyances which ultimately revest the property in the original conveyer.

In the present instance, Mrs. Dean effectively destroyed the joint tenancy by her unilateral conveyance to a "straw man" grantee; following the reconveyance, the property was thereafter held by Mrs. Dean and plaintiff as tenants in common or as community property.

The judgments are affirmed.

Paras, Acting, P. J., and Lally, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.