[No. A125733. First Dist., Div. Three. Nov. 4, 2010.]

BONNIE KIRCHER, Plaintiff and Respondent, v.
ADELAIDE KIRCHER et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of the Discussion, part A.

**COUNSEL**

Mattaniah Eytan and Howard Underwood for Defendants and Appellants.

Orme and Grabstein and Richard M. Grabstein for Plaintiff and Respondent.

**OPINION**

**JENKINS, J.**—Defendant and appellant Adelaide Kircher appeals the judgment entered after a bench trial.[1] Adelaide contends (1) the trial court erred by concluding that a marital settlement agreement (MSA) between Adelaide's deceased husband, Vincent Kircher, and his former wife, plaintiff Bonnie Kircher, which was executed in June 1976 and modified in 1987 by stipulation of the parties,[2] waived the provisions of Family Code, section 4337 and provided for continuing support payments to Bonnie after Vincent's death; (2) the trial court erred by concluding that Adelaide is personally liable to Bonnie for such continuing support payments in an amount not exceeding the fair market value of real property held by Vincent and Adelaide as joint tenants at the time of Vincent's death, pursuant to sections 13550 to 13551 of the Probate Code.[3]

 We conclude that the modified MSA waived the provisions of Family Code section 4337 and provided for continuing support payments to Bonnie

---

[1] Because the parties share a common surname, we shall respectfully refer to them throughout the opinion by their first names in order to avoid any confusion.

[2] Throughout this opinion we refer to the 1976 MSA and the changes incorporated in the 1987 stipulation as the modified MSA.

[3] Further statutory references are to the Probate Code unless otherwise noted.

after Vincent's death. Moreover, we find no error in the trial court's legal conclusion that the property held in joint tenancy falls within the ambit of section 13551. Accordingly, the judgment is affirmed.

## FACTS

The facts framing the legal issues presented are undisputed. Bonnie and Vincent married on December 10, 1960, and separated on February 13, 1970. The couple had no children during the marriage.[4] In June 1976, Vincent's attorney prepared the MSA between Bonnie and Vincent. The MSA states that "[t]he purpose of this Agreement is to make a final and complete settlement of all rights and obligations between [Bonnie and Vincent], including [their] respective property rights and [their] rights and obligations concerning the support of wife." Under the terms of the MSA, Vincent agreed to pay Bonnie $700 per month in support payments "terminating upon the death of either the husband or the wife or the remarriage of wife." At the time of the dissolution of the marriage in 1976 Bonnie was 53 years old.

Further, the MSA states: "It is our intention to effect an equal division of our community property listed in Exhibit 'B.' Because of the nature of husband's business operating primarily leased hotels, the division is not possible in kind. Husband will pay the substituted asset out of the revenue from the community property retained by him. [¶] . . . [¶] Husband agrees that . . . wife shall receive the community property described in 'Exhibit C.' [¶] Wife agrees that . . . husband shall receive the community property described in Exhibit 'D.' " The community property assigned to Bonnie in exhibit "C" includes a house in Millbrae, California, complete with furniture and furnishings, a one-half interest in real property at 440 Eddy Street in San Francisco, and the principal sum of $124,000 payable in monthly installments of $1,100. The community property assigned to Vincent under exhibit "D" of the MSA includes two San Francisco properties, a hotel at 410 Eddy Street and an apartment block at 640 Eddy Street, as well as a 50 percent interest in six hotel and apartment block leaseholds in San Francisco (the other 50 percent owned by a third party) and the proceeds of several life insurance policies. Under the MSA, Vincent also agreed to leave by will to Bonnie his undivided one-half interest in 440 Eddy Street.

In March 1987, Vincent and Bonnie jointly filed a "Stipulation and Order Modifying Interlocutory Judgment of Dissolution of Marriage" (1987 Stipulation). The 1987 Stipulation contains several recitals the first of which acknowledges that Bonnie has raised issues regarding the propriety and

---

[4] When she married Vincent, Bonnie had a seven-year-old daughter from a prior relationship.

equity of the division of community property set forth in the MSA. Further recitals state that Vincent has met the support obligations set forth in the MSA, denies any inequity or impropriety of the division of community property under the MSA, and "continues to have an abiding and sincere concern for [Bonnie's] well-being." The 1987 Stipulation also revised the support obligations under the MSA, in return for which Bonnie waived "once and for all any rights, causes of action, claims, title or interest in any of the property of whatsoever character and/or description set forth" in the MSA. Under the terms of the 1987 Stipulation, Vincent agreed to pay Bonnie "$2,000 per month commencing February 1, 1987, as and for spousal support," and continuing with monthly installments thereafter "until the death of [Bonnie] or until the remarriage of [Bonnie] or proof that [Bonnie] has lived with another person in a marital-like relationship for thirty or more consecutive days." In addition, Vincent agreed to purchase or lease a new vehicle for Bonnie at least every five years and to maintain health insurance for her benefit, both obligations to continue "until the death of [Bonnie], her remarriage, or proof that [Bonnie] has lived with another person in a marital-like relationship for thirty or more consecutive days."

In July 1998, following the execution of the modified MSA, Vincent married Adelaide. They remained married until Vincent's death in January 2005. Vincent executed his last will and testament on November 11, 2004. Under the provisions of the will, Vincent left to Adelaide, among other things, a property at 193 Oak Drive, San Rafael, his interest in the real property known as the Women's Hotel at 642 Jones Street in San Francisco, together with any other real property and leasehold interests that he owned at the time of his death.

Sometime during his marriage to Adelaide, but prior to his death, Vincent transferred title in three real properties, namely 193 Oak Drive, San Rafael, 642 Jones Street, San Francisco and 982 Post Street in San Francisco, to himself and Adelaide as joint tenants.[5] After Vincent died, Adelaide sold the Post Street property for $5 million and received from the escrow of the sale the sum of $3,874,994.33. Adelaide also sold the Jones Street property for $4.25 million and received proceeds from the sale in the amount of $2,925,811.13.

While Vincent was alive, he met all the support payments to Bonnie required under the modified MSA. After Vincent's death in January 2005, Bonnie filed a creditor's claim against Vincent's estate in probate court on July 11, 2005, asserting a claim for past and future obligations under the modified MSA. During this time, Adelaide continued to make support

---

[5] The record does not show when this transfer took place, nor does it contain copies of the deeds in question.

payments to Bonnie as provided in the modified MSA. Adelaide terminated monthly support payments to Bonnie in April 2008, but continued to pay for Bonnie's health insurance.

## PROCEDURAL BACKGROUND

On May 16, 2008, Bonnie filed a complaint against Adelaide personally and in her capacity as the executor of the will of Vincent Kircher, alleging that Adelaide is personally liable for Vincent's debts under sections 13550 to 13552 and seeking damages and attorney fees for breach of the terms of the modified MSA. On October 7, 2008, Bonnie filed a first amended complaint adding a claim for declaratory relief which sought a declaration that Adelaide, both individually and as the executor of Vincent's estate, was obligated to continue to comply with the terms of the modified MSA.

Thereafter, Adelaide filed a "Motion for Determination That [Bonnie] has no Right to Demand Payment out of Properties Held by [Adelaide] and Vincent Kircher in Joint Tenancy When Vincent Died." In her motion, Adelaide argued that Bonnie cannot enforce the modified MSA's support obligations against the real properties that she and Vincent held in joint tenancy because under settled law a surviving joint tenant takes the property free of creditors' claims. Bonnie, in her opposition, asserted that she did not seek a judgment lien upon the joint tenancy properties which Adelaide sold; rather she sought to impose personal liability for continuing support payments on Adelaide up to the value of those properties, pursuant to applicable sections of the Probate Code.

The trial court issued a tentative ruling on the motion, and after hearing oral argument adopted its tentative ruling, which states: "[Adelaide's] motion for determination that Probate Code sections 13550, et seq., do not apply to joint tenancy property is denied. Defendant relies on a strict interpretation of the language of Probate Code § 13551, which limits the personal liability of the surviving spouse to the value of community, quasi-community and separate property of the decedent 'that passes to the surviving spouse without administration.' Under traditional concepts of joint tenancy, defendant argues that no property 'passes' on the joint tenant's death because the right of survivorship attaches as a result of the original grant that created the joint tenancy, and not as a result of the death of a joint tenant. At least one case has interpreted the language of § 13551 more broadly as meaning property *'received or held* by the surviving spouse,' suggesting that it applies to property that was already possessed by the surviving spouse such as joint tenancy property. (*Dawes v. Rich* (1997) 60 Cal.App.4th 24, 34 [70 Cal.Rptr.2d 72]; see also Miller and Starr, Cal. Real Estate 3d, § 12:23, 'the interest of the deceased joint tenant passes to the surviving joint tenant or

tenants by operation of law.' . . .) The entire context of the Probate Code governing liability for debts of a deceased spouse supports the conclusion that the Legislature intended to reach *all property* that passes *without formal administration*, limited only by whether the property is community, quasi-community or separate property of the decedent, i.e., the character of the property, rather than the manner in which title is held. This conclusion is supported by Probate Code § 13553, which cuts off the personal liability of the surviving spouse who elects to subject all of the decedent's property to probate administration (in which case the creditors must look solely to the estate to satisfy their claims), and § 13554, which provides that any debt of the deceased spouse 'may be enforced against the surviving spouse in the same manner as it could have been enforced against the deceased spouse if the deceased spouse had not died.' [Adelaide] admits that Vincent's property held in joint tenancy could have been subject to a judgment lien (had he breached his obligation during his lifetime). [¶] It is important to note that [Bonnie] does not seek recovery or liens against the joint tenancy property, but seeks only to impose personal liability against defendant up to the fair market value of the property described in sections 13550, et seq. which this court finds may include the value of joint tenancy property that passed to [Adelaide] without administration."

Having determined that calculation of Adelaide's personal liability under section 13551, subdivision (c), encompasses property held in joint tenancy, the court conducted a bench trial and received evidence and testimony on the issue of whether the obligations set forth in the modified MSA survived Vincent's death. The court found by clear and convincing evidence that Vincent knowingly and intentionally "waived the otherwise automatic termination of spousal support provisions on his death." In this regard, the court stated that it "need not look any further" than the terms of the modified MSA, which evidenced a clear agreement that support payments would terminate only upon Bonnie's death.

An amended judgment was entered on May 27, 2009. Adelaide filed a motion for new trial on June 8, 2009. The trial court denied the motion for new trial by its order filed on July 21, 2009, and a timely notice of appeal followed.

## DISCUSSION

A. *Family Code Section 4337**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1105.

B. *Personal Liability Under the Applicable Provisions of the Probate Code*

Having determined that Vincent's support obligations to Bonnie survived his death, we now address the scope of Adelaide's personal liability for Vincent's obligations to Bonnie under the governing statutes. On this issue, Adelaide contends that the trial court erred in its conclusion that the property she held with Vincent in joint tenancy could be considered in determining the extent of her personal liability under section 13551. We conclude the trial court did not err on this point.

Section 13550 provides: "Except as provided in Sections 11446,[6] 13552,[7] 13553,[8] and 13554,[9] upon the death of a married person, the surviving spouse is personally liable for the debts of the deceased spouse chargeable against the property described in Section 13551 to the extent provided in Section 13551." (§ 13550.) Adelaide does not contend that any of the foregoing statutory exceptions apply here. Accordingly, the extent of her personal liability for Vincent's continuing support obligations is governed solely by section 13551.

Section 13551 provides: "The liability imposed by Section 13550 shall not exceed the fair market value at the date of the decedent's death, less the amount of any liens and encumbrances, of the total of the following: [¶] (a) The portion of the one-half of the community and quasi-community property belonging to the surviving spouse under Sections 100 and 101 that is not exempt from enforcement of a money judgment and is not administered in the estate of the deceased spouse. [¶] (b) The portion of the one-half of the community and quasi-community property belonging to the decedent under Sections 100 and 101 that passes to the surviving spouse without administration. [¶] (c) The separate property of the decedent that passes to the surviving spouse without administration." (§ 13551, subds. (a)–(c).)

---

[6] Section 11446 provides that "funeral expenses and expenses of last illness shall be charged against the estate of the decedent . . ." and not against the surviving spouse.

[7] Section 13552 specifies the limitations barring actions against the surviving spouse.

[8] Section 13553 is a safe harbor provision, stating: "The surviving spouse is not liable under this chapter if all the property described in paragraphs (1) and (2) of subdivision (a) of Section 13502 is administered under this code." Section 13502 provides in pertinent part that a surviving spouse may elect to administer under the code "all or a portion of" the community property, the quasi-community property and the decedent's separate property. (§ 13502, subd. (a).)

[9] Section 13554 provides: "(a) Except as otherwise provided in this chapter, any debt described in Section 13550 may be enforced against the surviving spouse in the same manner as it could have been enforced against the deceased spouse if the deceased spouse had not died. [¶] (b) In any action or proceeding based upon the debt, the surviving spouse may assert any defense, cross-complaint, or setoff which would have been available to the deceased spouse if the deceased spouse had not died. [¶] (c) Section 366.2 of the Code of Civil Procedure applies in an action under this section."

■ Section 13551 clearly limits a surviving spouse's personal liability to the fair market value, on the date of the decedent's death, of the surviving and decedent spouse's share of community (and quasi-community) property, as well as the separate property of the decedent spouse. Thus, the question before us is whether the property held in joint tenancy by Vincent and Adelaide falls within subdivisions (a) through (c) of section 13551. We conclude that it does, because, as demonstrated below, the Legislature clearly intended that section 13551 reach all property, including property held in joint tenancy, as long as it is properly characterized as community property or the decedent's separate property.

■ We begin our analysis by noting that the Legislature, in describing the scope of a surviving spouse's personal liability in section 13551, used the terms "community" property, "quasi-community property" and "separate property." These terms, which are defined in the Family Code, govern the characterization and disposition of property in dissolution proceedings. Family Code section 760 states that all property acquired by a married person while domiciled in this state is presumed to be community property unless traceable to a separate property source. (See Fam. Code, § 760.) Family Code section 770 defines separate property, inter alia, as "[a]ll property owned by the person before marriage" and "[a]ll property acquired by the person after marriage by gift, bequest, devise, or descent." (Fam. Code, § 770, subd. (a)(1) & (2).) Under the Family Code, *all property interests* held by a husband and wife must be characterized as separate, community, or quasi-community property for purposes of the division of property upon marital dissolution. (See *In re Marriage of Rossin* (2009) 172 Cal.App.4th 725, 732 [91 Cal.Rptr.3d 427].)

The Legislature's utilization, in section 13551, of terms pertaining to the characterization and disposition of all property held by spouses at the time of dissolution, manifests, in our view, a clear intent that the scope of a surviving spouse's personal liability encompasses all property which, at the time of the decedent's death, is characterized as community property or the decedent's separate property. Vincent and Adelaide's ownership of the subject property as joint tenants reflects the manner in which they held title to the property. Nevertheless, the value of their respective community property interests in joint tenancy property, as well as Vincent's separate property interests, must be considered in determining a surviving spouse's personal liability under the broad mandate of section 13551. (Cf. *Dawes v. Rich, supra,* 60 Cal.App.4th at p. 35 [opining that § 13550 broadly imposes "personal liability upon the receipt of assets which in fairness should be devoted to meeting the debts of the transferor"].)

■ Bearing in mind the Legislature's intent to capture within section 13551 the value of *all property which is characterized*, at the time of the

decedent's death, as community property or the decedent's separate property, we now turn to the question of whether the joint tenancy property at issue here falls within section 13551. The fundamental principle underlying the characterization of property held by spouses under California's community property law is that "property acquired during marriage in joint form, including joint tenancy or tenancy in common, is presumed to be community property" unless it meets the statutory definition of separate property. (*Estate of Mitchell* (1999) 76 Cal.App.4th 1378, 1385–1386 [91 Cal.Rptr.2d 192]; see *In re Marriage of Haines* (1995) 33 Cal.App.4th 277, 289–290 [39 Cal.Rptr.2d 673] (*Haines*) [same].) The characterization of property as community or separate is not dependent on the form in which title is taken. (*Machado v. Machado* (1962) 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55].) On the other hand, "this general community property presumption is not a title presumption" (*Haines, supra,* 33 Cal.App.4th at p. 290), and it may be rebutted by credible evidence under a preponderance of the evidence standard (*In re Marriage of Ettefagh* (2007) 150 Cal.App.4th 1578, 1584–1586 [59 Cal.Rptr.3d 419]).

The undisputed facts here establish that, during the course of his marriage to Adelaide, Vincent granted Adelaide an interest in the subject properties, thereby transmuting the subject property from sole ownership to ownership with Adelaide, as joint tenants.[10] Application of the presumptions governing the characterization of property under California's community property law to these facts indicate that the transmutation worked a change in the characterization of the subject property from Vincent's separate property into community property, in which case it would be captured under section 13551, subdivisions (a) and (b) for purposes of determining the scope of Adelaide's personal liability as the surviving spouse. However, we need not decide which specific subdivision of section 13551 the subject property falls within to resolve the issue before us. At the time of Vincent's death, the subject property was either community property or it was Vincent's separate property, and thus the trial court did not err in considering it when determining the scope of Adelaide's personal liability under section 13551.

Adelaide argues, however, that because property held in joint tenancy with right of survivorship passes without aid of administration directly to the surviving spouse, such property is not properly considered in determining the

---

[10] A transmutation is not valid " 'unless made in writing by an express declaration that is made . . . by the spouse whose interest in the property is adversely affected.' " (*Estate of Bibb* (2001) 87 Cal.App.4th 461, 463 [104 Cal.Rptr.2d 415] [holding that husband's use of the word "grant" (in deed which "granted the property" to husband and wife as joint tenants) to convey real property into joint tenancy satisfied the express declaration requirement]; see *id.* at pp. 468–469.) Whereas the record does not contain the deeds in question, there is no contention that the transmutation of the properties in this case was invalid.

scope of Adelaide's liability for Vincent's debts. We disagree. As we concluded above, it is not dispositive that the joint tenancy property passed to Adelaide by operation of the right of survivorship. Rather, section 13551 broadly encompasses all community property interests held by the spouses, as well as all separate property interests held by the deceased spouse, and imposes personal liability on the surviving spouse up to the fair market value, at the time of the deceased spouse's death, of assets that can be so characterized. At the time of decedent's death, the property held in joint tenancy by Vincent and Adelaide was presumed to be community property subject to rebuttal by Vincent that it remained his separate property. Either way, the property at issue falls within the ambit of section 13551.

Moreover, our conclusion is not at odds with the cases relied upon by Adelaide, which stand for the proposition that a surviving joint tenant takes the property free of any encumbrances placed upon it by the deceased joint tenant, citing, among others, *Tenhet v. Boswell* (1976) 18 Cal.3d 150 [133 Cal.Rptr. 10, 554 P.2d 330] (*Tenhet*). In *Tenhet*, for example, the California Supreme Court held that "a joint tenant may, during his lifetime, grant certain rights in the joint property without severing the tenancy. But when such a joint tenant dies his interest dies with him, and any encumbrances placed by him on the property become unenforceable against the surviving joint tenant. . . . [¶] Any other result would defeat the justifiable expectations of the surviving joint tenant. Thus, if A agrees to create a joint tenancy with B, A can reasonably anticipate that when B dies A will take an unencumbered interest in fee simple." (*Tenhet, supra*, 18 Cal.3d at pp. 159–160.)

Such cases as *Tenhet* are inapposite to the case at bar. Here, Adelaide is not seeking to avoid an encumbrance placed upon any of the properties by Vincent while the properties were held in joint tenancy. On the contrary, Adelaide's expectations with respect to the properties as the surviving joint tenant were not frustrated in any manner. In fact, Adelaide took an unencumbered interest in fee simple in the properties and thereafter sold two of them at full market value. Moreover, the application of *Tenhet's* rationale is further limited here by the fact that the separate indebtedness to Bonnie arose before the creation of the joint tenancies between Vincent and Adelaide. In sum, case law on the question of whether a surviving *joint tenant* takes a property free of an encumbrance placed upon it by the deceased *joint tenant* does not speak to the question of whether a *surviving spouse* may be held *personally liable* for the debts of the *deceased spouse* pursuant to the California statutory scheme described above.

Given the Legislature's clear intent to broadly define the scope of a surviving spouse's personal liability for debts of a deceased spouse, and having examined the evidence presented by the parties at trial, we find no

error in the trial court's legal conclusion that the property held in joint tenancy falls within the ambit of section 13551.

## DISPOSITION

The judgment is affirmed. Adelaide shall bear costs on appeal.

Pollak, Acting P. J., and Siggins, J., concurred.

A petition for a rehearing was denied November 18, 2010, and appellants' petition for review by the Supreme Court was denied February 16, 2011, S188903.